# MARINE COOKS & STEWARDS, AFL, et al. v. PANAMA STEAMSHIP CO., LTD., et al.

No. 403.   Argued March 2–3, 1960.—Decided April 18, 1960.

*John Paul Jennings* argued the cause for petitioners. With him on the brief was *J. Duane Vance*.

*John D. Mosser* argued the cause for respondents. With him on the brief was *Charles B. Howard*.

*Solicitor General Rankin, Assistant Attorney General Doub, Samuel D. Slade* and *Herbert E. Morris* filed a brief for the United States, as *amicus curiae*.

Mr. Justice Black delivered the opinion of the Court.

The respondents, who are the owner, time charterer, and master of the Liberian registered vessel, S. S. *Nikolos*, brought this action in a United States District Court against the petitioner union and its members praying for

temporary and permanent injunctions to restrain, and for damages allegedly suffered from, the union's peaceful picketing of the ship in American waters and its threats to picket shore consignees of the ship's cargo should they accept delivery. The union's sole contention was that the District Court was without jurisdiction to restrain the picketing because of the Norris-LaGuardia Act which states in § 1:

"That no court of the United States, as herein defined, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this Act; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this Act." [1]

Section 4 of that same law specifically denies jurisdiction to District Courts to issue any restraining order or temporary or permanent injunction to prohibit unions from:

"(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence . . . ." [2]

Notwithstanding these provisions of the Norris-LaGuardia Act and despite an express finding that the union and its members had not been guilty of fraud, and had not threatened or committed any acts of physical violence to any person or any property, the District Court issued a

---

[1] 47 Stat. 70, 29 U. S. C. § 101.

[2] 47 Stat. 70, 71; 29 U. S. C. § 104. Even in the limited jurisdiction the Norris-LaGuardia Act leaves to federal courts in labor controversies, other sections of the Act narrowly circumscribe the cases where, the parties against whom, and the circumstances in which, injunctions may issue. If, however, issuance of a specific injunction is prohibited by one section, such as § 4, compliance with the requirements of another section, such as § 7, does not justify the injunction.

temporary injunction to restrain the picketing.[3] The injunction prohibited picketing by the petitioner union of "the SS 'Nikolos' or any other vessel registered under a foreign flag and manned by an alien crew and owned, operated or chartered by" respondents, in the Puget Sound area. This action of the court was based on its conclusions that (a) the case did not involve or grow out of any labor dispute within the meaning of the Norris-LaGuardia Act and (b) even if there were a labor dispute within the meaning of that Act, the court had jurisdiction to restrain the picketing because it interfered in the internal economy of a vessel registered under the flag of a friendly foreign power and amounted to an "unlawful interference with foreign commerce."[4] The court's conclusion rested on the following facts, about which there was no substantial dispute.

The petitioner and other national labor organizations act as bargaining representatives for most of the unlicensed personnel of vessels that fly the American flag on the Pacific Coast. Petitioner alone, pursuant to National Labor Relations Board certification, represents employees of the stewards' department on a large majority of those vessels. The S. S. *Nikolos* is owned by a Liberian corporation, was time-chartered for this trip by another Liberian corporation, and all members of its crew were aliens working under employment contracts made outside this country. There was no labor dispute between the ship's employees and the ship. The *Nikolos* picked up a cargo of salt in Mexico and carried it to the harbor of the port of Tacoma, Washington, for delivery to an American consignee there. After the ship entered the Tacoma harbor it was met by the union's boat which began to circle around the *Nikolos* displaying signs marked

---

[3] *Panama Steamship Co.* v. *Marine Cooks & Stewards, AFL,* 1959 Am. Mar. Cas. 340.

[4] 1959 Am. Mar. Cas. 340, 350.

"PICKET BOAT." Later an additional sign was put on the boat reading: "AFL–CIO seamen protest loss of their livelihood to foreign flagships with substandard wages or substandard conditions." The union threatened to extend its picketing to the consignee of the salt should an attempt be made to berth and unload that cargo. Although the picketing was peaceful and there was no fraud, the result was that the ship could not deliver its cargo.

On appeal from the temporary injunction to the Court of Appeals the petitioner argued that the injunction granted by the District Court was beyond the jurisdiction of that court because of the provisions of § 4 of the Norris-LaGuardia Act previously set out,[5] but the Court of Appeals rejected that contention and upheld the injunction.[6] That court's view was based almost entirely upon our holding in *Benz* v. *Compania Naviera Hidalgo,* 353 U. S. 138. Certiorari was granted to consider the question of the applicability of the Norris-LaGuardia Act here, 361 U. S. 893, and in *Order of Railroad Telegraphers*

---

[5] In the District Court respondents rested their claim for jurisdiction on 28 U. S. C. § 1331 which provides:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws or treaties of the United States."

Between the time the District Court's injunction was appealed and the time the Court of Appeals decided the appeal, this Court decided *Romero* v. *International Term. Oper. Co.,* 358 U. S. 354. That case decided that § 1331 does "not extend, and could not reasonably be interpreted to extend, to cases of admiralty and maritime jurisdiction." *Id.,* at 378. In the Court of Appeals the petitioner here broadened its challenge to the jurisdiction of the District Court in this case by invoking the interpretation of § 1331 declared in the *Romero* case. The view we take of the challenge to the court's jurisdiction under the Norris-LaGuardia Act makes it unnecessary for us to determine the entirely separate question raised under the *Romero* case.

[6] *Marine Cooks & Stewards, AFL,* v. *Panama Steamship Co.,* 265 F. 2d 780 (C. A. 9th Cir. 1959).

v. *Chicago & North Western R. Co.,* 361 U. S. 809, decided this day, *ante,* p. 330. We think neither the holding nor the opinion in the *Benz* case supports the narrow construction the Court of Appeals gave the Norris-LaGuardia Act in this case.

The *Benz* case was decided by a United States District Court sitting as a state court to enforce state law under its diversity jurisdiction. The question in the *Benz* case was whether the Labor Management Relations Act of 1947 governed the internal labor relations of a foreign ship and its foreign workers under contracts made abroad while that ship happened temporarily to be in American waters. The *Benz* case decided that the Labor Management Relations Act had no such scope or coverage and that it accordingly did not pre-empt the labor relations field so as to bar an action for damages for unlawful picketing under Oregon law. Nothing was said or intimated in *Benz* that would justify an inference that because a United States District Court has power to award damages in state cases growing out of labor disputes it also has power to issue injunctions in like situations. That question—of United States courts' jurisdiction to issue injunctions in cases like this—is to be controlled by the Norris-LaGuardia Act.

That Act's language is broad. The language is broad because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act. The history and background that led Congress to take this view have been adverted to in a number of prior opinions of this Court in which we refused to give the Act narrow interpretations that would have restored many labor dispute controversies to the courts.[7]

---

[7] See, *e. g., United States* v. *Hutcheson,* 312 U. S. 219; *Milk Wagon Drivers' Union* v. *Lake Valley Farm Products,* 311 U. S. 91; *New*

It is difficult to see how this controversy could be thought to spring from anything except one "concerning terms or conditions of employment," and hence a labor dispute within the meaning of the Norris-LaGuardia Act.[8] The protest stated by the pickets concerned "substandard wages or substandard conditions." The controversy does involve, as the Act requires, "persons who are engaged in the same industry, trade, craft, or occupation."[9] And it is immaterial under the Act that the unions and the ship and the consignees did not "stand in the proximate relation of employer and employee."[10] This case clearly does grow out of a labor dispute within the meaning of the Norris-LaGuardia Act.

---

*Negro Alliance* v. *Sanitary Grocery Co.*, 303 U. S. 552; *Lauf* v. *Shinner & Co.*, 303 U. S. 323. And see *Allen Bradley Co.* v. *Local Union No. 3, I. B. E. W.*, 325 U. S. 797, 805.

"The underlying aim of the Norris-LaGuardia Act was to restore the broad purpose which Congress thought it had formulated in the Clayton Act but which was frustrated, so Congress believed, by unduly restrictive judicial construction." *United States* v. *Hutcheson*, 312 U. S. 219, 235–236.

This congressional purpose, as is well known, was prompted by a desire to protect the rights of laboring men to organize and bargain collectively and to withdraw federal courts from a type of controversy for which many believed they were ill-suited and from participation in which, it was feared, judicial prestige might suffer. See Frankfurter and Greene, The Labor Injunction (1930), at 200; Gregory, Labor and the Law (1958), at 184–199.

[8] Section 13 of the Norris-LaGuardia Act, 29 U. S. C. § 113 (c), defines a labor dispute, for purposes of that Act, as follows: "The term 'labor dispute' includes any controversy *concerning terms or conditions of employment,* or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee.*" (Emphasis supplied.)

[9] 47 Stat. 70, 73; 29 U. S. C. § 113 (a).

[10] See note 8, *supra*.

The District Court held, however, that even if this case involved a labor dispute under the Norris-LaGuardia Act the court had jurisdiction to issue the injunction because the picketing was an "unlawful interference with foreign commerce" and interfered "in the internal economy of a vessel registered under the flag of a friendly foreign power" and prevented "such a vessel from lawfully loading or discharging cargo at ports of the United States." [11]  The Court of Appeals adopted this position, but cited no authority for its statement that the picketing was "unlawful," nor have the respondents in this Court pointed to any statute or persuasive authority proving that petitioner's conduct was unlawful. *Compare* § 20 of the Clayton Act, 29 U. S. C. § 52.  And even if unlawful, it would not follow that the federal court would have jurisdiction to enjoin the particular conduct which § 4 of the Norris-LaGuardia Act declared shall not be enjoined. Nor does the language of the Norris-LaGuardia Act leave room to hold that jurisdiction it denies a District Court to issue a particular type of restraining order can be restored to it by a finding that the nonenjoinable conduct may "interfere in the internal economy of a vessel registered under the flag of a friendly foreign power." [12]

---

[11] 1959 Am. Mar. Cas. 340, 350.

[12] Unlike the situation in the *Benz* case, in which American unions to which the foreign seamen did not belong picketed the foreign ship in sympathy with the strike of the foreign seamen aboard, the union members here were not interested in the internal economy of the ship, but rather were interested in preserving job opportunities for themselves in this country.  They were picketing on their own behalf, not on behalf of the foreign employees as in *Benz*.  Though the employer here was foreign, the dispute was domestic.  For a thoughtful discussion of the impact of foreign employment upon American labor standards, see *Afran Transport Co.* v. *National Maritime Union*, 169 F. Supp. 416, 1959 Am. Mar. Cas. 326 (holding that the Norris-LaGuardia Act withdrew from Federal District Courts juris-

Congress passed the Norris-LaGuardia Act to curtail and regulate the jurisdiction of courts, not, as it passed the Taft-Hartley Act, to regulate the conduct of people engaged in labor disputes. As we pointed out in the *Benz* case, a ship that voluntarily enters the territorial limits of this country subjects itself to our laws and jurisdiction as they exist.[13]   The fact that a foreign ship enters a United States court as a plaintiff cannot enlarge the jurisdiction of that court.   There is not presented to us here, and we do not decide, whether the picketing of petitioner was tortious under state or federal law.   All we decide is that the Norris-LaGuardia Act deprives the United States court of jurisdiction to issue the injunction it did under the circumstances shown.

The judgment of the Court of Appeals is reversed and the case is remanded to the District Court with directions to dismiss the petition for injunction.

*It is so ordered.*

MR. JUSTICE WHITTAKER, believing that the controversy in this case does not constitute a lawful "labor dispute" within the meaning of the Norris-LaGuardia Act, see his dissenting opinion in *Order of Railroad Telegraphers* v. *Chicago & North Western R. Co., ante,* p. 345, dissents.

---

diction to issue labor injunctions in a labor dispute strikingly like the one here involved).   But see *Fianza Cia. Nav. S. A.* v. *Benz,* 1959 Am. Mar. Cas. 1758, 37 CCH Lab. Cas. ¶ 65,495.

  [13] *Benz* v. *Compania Naviera Hidalgo,* 353 U. S. 138, 142.   See generally, Comment, The Effect of United States Labor Legislation on the Flag-of-Convenience Fleet: Regulation of Shipboard Labor Relations and Remedies Against Shoreside Picketing, 69 Yale L. J. 498, 516–525, esp. 523–525.

Here respondents do not even claim that foreign ships seeking injunctions can obtain them without complying with the requirement of § 7 of the Norris-LaGuardia Act that the court hold a hearing and make specified findings.