10 N.Y.2d 218 (1961)
Incres Steamship Company, Ltd., Respondent-Appellant,
v.
International Maritime Workers Union et al., Appellants-Respondents, et al., Defendants.
Court of Appeals of the State of New York.
Argued May 23, 1961.
Decided July 7, 1961.
Breck P. McAllister, Philip J. Loree and Robert S. Ogden, Jr., for respondent-appellant.
H. Howard Ostrin, Herman E. Cooper, Eugene N. Sosnoff and Harold L. Young for appellants-respondents.
Judges DYE, FROESSEL and FOSTER concur with Chief Judge DESMOND; Judge FULD dissents in an opinion in which Judge BURKE concurs and in which Judge VAN VOORHIS concurs in the following memorandum: I concur in the dissenting opinion by Judge FULD except that I do not reach the question whether the same result would obtain in case of vessels of foreign registry but domestic ownership.
*221 Chief Judge DESMOND.
Plaintiff Incres Steamship Company, Ltd., is a Liberian corporation owned by Italian stockholders. During seven months of each year it operates two Liberian-registered passenger ships, manned by alien crews signed on in Europe, on regularly scheduled cruises to Caribbean ports, originating at and returning to New York City. Its main office is in London and it has no place of business in Liberia but it has in New York City an office which it shares with a New York corporation (Incres Line Agency, Inc.) owned and controlled by Incres. The New York office is run by its manager who is president of Incres and the New York corporation acts as agent for Incres in booking passengers for the cruises, arranging schedules, and providing supplies, repairs and the like.
Defendant International Maritime Workers Union (IMWU) is an American labor union formed in 1959 by two other American maritime unions, both affiliated with AFL-CIO, to organize and improve job conditions of merchant seamen employed on "flag-of-convenience" ships, that is, ships registered in foreign countries (principally in Liberia, Panama and Honduras) but *222 whose beneficial owners are not otherwise connected with the nations whose flags they use. As the United States Supreme Court observed in Lauritzen v. Larsen (345 U. S. 571, 587): "It is common knowledge that in recent years a practice has grown, especially among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries." American seamen's wages are several times as high as those paid by Incres. Beginning in February, 1960 representatives of IMWU began a campaign to organize plaintiff's seamen, going aboard the two vessels when docked in New York City and talking to the crew members. There were fruitless negotiations between Incres and the union. On May 13, 1960 the Incres cruise ship Nassau arriving at New York was met by IMWU representatives who, picketing peacefully, carried signs charging unfairness of Incres in refusing recognition to the union and demanding better wages and working conditions for the seamen. Later that day the IMWU pickets persuaded about 100 members of the Nassau's crew to leave the ship shortly before her scheduled departure and refuse to obey her captain's orders to return, resulting in a cancellation of the sailing. Two days later when the other Incres cruise ship Victoria came into New York harbor she could not dock because the strike-bound Nassau occupied the berth. The Victoria lay at anchor. While her passengers were being brought ashore on tugs, IMWU representatives arrived in a launch, boarded the tugs and at least for a time persuaded the tug crews to stop disembarking the Victoria's passengers. As a result of the picketing and striking, several cruises were cancelled. The union filed with the National Labor Relations Board (NLRB) charges of unfair labor practices which are still pending. Incres began this action in Supreme Court, New York County, and obtained first a temporary, then after trial a permanent, injunction enjoining the union from picketing plaintiff's vessels or urging or encouraging crew members not to work on the vessels.
From the beginning the respective parties have taken the same two opposing positions as to which the Appellate Division divided 3 to 2 and which are again urged on us on this appeal. Incres argues, and both courts below held, that defendant's acts were illegal and tortious, and that the New York Supreme *223 Court, not the National Labor Relations Board, had jurisdiction and power to restrain them. The union  and the two dissenting Justices at the Appellate Division  insist that the NLRB has under San Diego Unions v. Garmon (359 U. S. 236; see Dooley v. Anton, 8 N Y 2d 91) exclusive primary jurisdiction since the conduct complained of is at least "arguably" or "potentially" subject to Federal regulation as protected activity or prohibited unfair labor practice under the Labor Management Relations Act (U. S. Code, tit. 29, § 141 et seq.). The only real question for us is whether the NLRB or the New York courts have jurisdiction of this controversy or, putting it more accurately, whether there is such doubt as to the applicability of the Federal statute that under the San Diego Unions v. Garmon "arguably subject" rule (359 U. S. 236, 245, supra) the State courts must yield to "the exclusive primary competence" of the NLRB.
The union, besides asserting the exclusive jurisdiction of the NLRB, argues that its conduct was not unlawful, that the New York courts have no power to enjoin a "maritime tort" and that, in any event, injunctive relief from a New York court is precluded by the "labor dispute" provisions of section 876-a of the Civil Practice Act. We will assume, as did the Appellate Division, that the union is wrong as to all those positions, and go to the real question  jurisdiction. (This court has jurisdiction of the appeal because the Appellate Division made a slight modification of the permanent injunction by changing the language which prohibited picketing the vessels "for any purpose" so as to read for "any such purpose"  that is, a limitation to the particular activity condemned.)
The whole issue may be stated thus: is this dispute "arguably subject" to NLRB jurisdiction or, on the contrary, has it been authoritatively determined that the Labor Management Relations Act is completely inapplicable to labor disputes between nationals of other countries operating ships under foreign flags? The Supreme Court has not definitively made answer to that, but recent judicial and NLRB history, some of it made since the Appellate Division decision here, leaves it disputable that the NLRB has primary jurisdiction. The NLRB has taken jurisdiction of several representation cases as to foreign flag vessels (Peninsular & Occidental S. S. Co., 42 LRRM 1113 *224 [1958]; Eastern Shipping Corp., 44 LRRM 1571 [1959], and West India Fruit & S. S. Co., 47 LRRM 1269 [1961]) and in Navios Corp. v. National Mar. Union (402 Pa. 325 [1960]) the United States Supreme Court (366 U. S. 905 [1961]) denied certiorari as to a Pennsylvania Supreme Court decision which had upheld dismissal of a State court suit on the ground of exclusive NLRB jurisdiction. Both the NLRB holding in the West India case and the denial of certiorari in Navios came after the Appellate Division's determination of the present case. In retaining jurisdiction in West India Fruit & S. S. Co., the National Labor Relations Board wrote most comprehensively, reviewing practically every aspect of this question. We shall discuss that holding later on in this opinion but we say now that it clearly refutes the allegation in paragraph 17 of the complaint in the present action that the Federal labor relations statute does not "apply to foreign ships with foreign crews in any way".
Incres cites Benz v. Compania Naviera Hidalgo (353 U. S. 138) and Marine Cooks v. Panama S. S. Co. (362 U. S. 365) as final authority that the Federal act has no coverage of internal labor relations between a foreign ship and its foreign workers. The union answers correctly that the Benz case as explained in the Marine Cooks Union opinion related only to a ship which "happened temporarily to be in American waters" (see 362 U. S., p. 369). Benz marked the point of division in the Appellate Division. However, the emphasis in Benz on the transient character of the American contacts of the ship there involved makes it impossible to regard the Benz holding, as the Appellate Division majority did, as a determination that "Congress did not intend to apply the Federal statute at all to foreign shipping." Left open by the Benz case was the question of what shipping is so "foreign" as to be excluded. All agree that foreign registration is not enough (see Afran Transp. Co. v. National Mar. Union, 169 F.Supp. 416, cited by the Supreme Court in the Marine Cooks Union opinion, 362 U. S. 365, 371, supra). All agree that Congress has power to intrude on the internal economy of a foreign-registered ship as a condition to permitting entry into American ports or waters (see Benz v. Compania Naviera Hidalgo, 353 U. S. 138, 144-145, 147, supra). The unresolved question is as to whether Congress intended its *225 statute to apply to labor relations on a ship which while foreign-registered, foreign-crewed and foreign-owned has an American port as one of the two termini of its fixed, regular shuttle service, conducts an important part of its business from a New York City office and has no office at all in Liberia, the country whose flag its vessels fly. Is it possible to argue that those American "contacts" are sufficient for NLRB jurisdiction? The Federal Supreme Court, whatever answer it may finally give as to that, has already told us in the Garner v. Teamsters Union (346 U. S. 485, 490) and San Diego Unions v. Garmon (359 U. S. 236, 244, supra) cases that the State courts are "not primary tribunals to adjudicate such issues", that these determinations must "be left in the first instance to the National Labor Relations Board" and, where conduct complained of is "arguably" or "potentially" subject to regulation and the Federal act, "States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board" to avert "state interference with national policy". Under the board's West India Fruit & S. S. Co. decision (47 LRRM 1269, supra) it is, we think, certainly uncertain whether the board could validly or would take jurisdiction of this controversy. Indeed, a complaint by the union against alleged unfair labor practices by Incres has been pending before the board for a year without any decision as to jurisdiction or merits.
The ship in the West India Fruit & S. S. Co. case (47 LRRM 1269, supra) was the freighter Sea Level flying the Liberian flag and owned by a Liberian corporation but operating as a common carrier between Louisiana and Cuba, and with a Cuban crew. Clearly, held the board, she was engaged in "commerce" under the Federal act, the alleged unfair labor practices "affected" commerce under the act and nothing in the act exempts the maritime industry or seafarers. The "ship-territory" doctrine, said the board, has nothing to do with the territorial reach of the statute (Cunard S. S. Co. v. Mellon, 262 U. S. 100, 123) and so there is no "extraterritoriality" to interfere with applying the Federal statute to a foreign ship in American waters. The board concluded that there was nothing to prevent Congress applying this law to events occurring on foreign-registered ships in domestic waters.
*226 The question, said the board, was whether Congress, empowered as it is to regulate such ships while engaged in our foreign commerce, has by this act chosen to do so. The answer, it said, cannot be all inclusive but must under Supreme Court rulings be found by ascertaining and valuing the contacts between the transactions and the governments whose laws are in competition and by weighing the significance of one or more of those contacts (see Lauritzen v. Larsen. 345 U. S. 571, 578, supra, and Benz v. Compania Naviera Hidalgo, 353 U. S. 138, supra). To warrant application of American law, held the board, not all significant contacts need be American. Neither the "flag law" nor American ownership nor the nonresident status of the crew nor the "internal order doctrine" nor any applicable treaty is necessarily decisive, one way or the other. The board noted that the controversy was between an American union and an American employer, since the owner corporation and its stockholders were American. But the result reached by the board did not necessarily turn on those latter circumstances. The American contacts, held the board, were that the "dispute arose aboard a vessel which engaged exclusively in American foreign commerce, which operates regularly out of an American port, and which is drydocked and regularly provisioned in the United States." The foreign contacts, it said, were "the registry of the vessel and the nationality of the crew which works under foreign articles signed, however, in the United States." The Benz case (supra), so the board thought, meant no more than that "the Labor Act does not extend to a foreign flag vessel, its foreign owner and foreign crew absent substantial American commerce". While the board's decision mentions the American nationality of the stockholders of the foreign corporation operating the Sea Level, no particular point is made of that "contact" and there is no indication that the result would have been different had the stockholders been nationals of other countries. If the board had meant that domestic incorporation or domestic stock ownership was the essential thing, it could have said so. In Eastern Shipping Corp. (44 LRRM 1571 [1959], supra) beneficial ownership of the foreign corporation was shown to be 95% foreign, but the board in a nonfinal decision overruled its Regional Director who had dismissed a representation proceeding because it involved labor relations on a "foreign" ship.
*227 All the other arguments against NLRB jurisdiction as put forth by Incres here, including the "national policy" argument, were rejected in the board's opinion in the West India Fruit & S. S. Co. proceeding (47 LRRM 1269, supra). It is surely "arguable" that the board would exercise jurisdiction in the dispute as to which this injunction was ordered. We should, therefore, hold as we did in Dooley v. Anton (8 N Y 2d 91, supra) that at least until the board refuses jurisdiction the State courts have none.
The judgment should be reversed and the complaint dismissed, with costs to defendants-appellants-respondents in all courts.
FULD, J. (dissenting).
The plaintiff, Incres Steamship Company, Ltd., owns and operates two ocean-going liners generally engaged in the passenger cruise trade between New York City and Caribbean ports. In the spring of 1960, the defendant Maritime Workers Union organized, picketed and struck those vessels, completely disrupting their operations. The plaintiff thereupon instituted this action for injunctive relief and damages. The court at Special Term, denying a motion made by the defendants to dismiss the suit for lack of jurisdiction, granted the plaintiff the broad injunction which it had sought. The Appellate Division, though it agreed with all that the trial court had decided, modified the resulting judgment so as to limit the injunction "to the condemned [illegal] activity * * * presented in this case". Both plaintiff and the defendants appeal to us as of right.
We are called upon to construe the National Labor Relations Act, for the jurisdiction of the courts over the subject matter of this action depends upon whether the National Labor Relations Board has jurisdiction under that statute. If the Board has such jurisdiction, then, the courts have no authority to act. More specifically, the question presented for decision is whether the Act applies to a controversy affecting a foreign (Liberian) flagship  engaged in foreign commerce bringing it to and from United States ports for short stays  which is 100% owned and controlled by foreign nationals and manned by a foreign crew, recruited and hired in the ship's home port in Italy and serving under foreign articles entered abroad.
In our view, the answer is clearly in the negative. Indeed, as Justice BREITEL observed in his comprehensive opinion for *228 the Appellate Division, such a conclusion finds strong support in recent decisions of the Supreme Court. (See Benz v. Compania Naviera Hidalgo, 353 U. S. 138; Marine Cooks v. Panama S. S. Co., 362 U. S. 365; see, also, Lauritzen v. Larsen, 345 U. S. 571.) "Our study of the Act", wrote the court in the Benz case, "leaves us convinced that Congress did not fashion it to resolve labor disputes between nationals of other countries operating ships under foreign laws. The whole background of the Act is concerned with industrial strife between American employers and employees" (353 U. S., at pp. 143-144).
The circumstance that there was here substantial continuing American foreign commerce and that the plaintiff had a New York corporation to act as its American agent is not sufficient to render inapplicable the rationale underlying the Benz decision and vest the National Labor Relations Board with jurisdiction. All-important in the case before us is the fact that the vessels were owned and controlled by Italian nationals and that their home port was, for all essential purposes, in Genoa; in addition, it might be noted, their crews, entirely alien, consisted largely of Italians who had signed on in Italy under contracts made abroad. In our judgment, if the National Labor Relations Act were to be held to cover the foreign-owned ships here involved simply because they dock in New York City and employ a New York corporation as their American agent, it would follow that the Act applies to give the board jurisdiction over controversies involving seamen on board the great fleets of foreign flag and foreign-owned passenger and cargo vessels while engaged in trips between the Port of New York and the foreign countries.
It is hardly necessary to observe that in terms of comity between nations such a result could not help but have a disastrous effect. When in the Benz case the argument was advanced as to the Act's applicability to foreign-owned ships, the Supreme Court expressed its concern in these words: "For us to run interference in such a delicate field of international relations there must be present the affirmative intention of the Congress clearly expressed. It alone has the facilities necessary to make fairly such an important policy decision where the possibilities of international discord are so evident and retaliative action so certain. We, therefore, conclude that any such appeal should be directed to the Congress rather than *229 the courts" (353 U. S., at p. 147). Indeed, in Lauritzen v. Larsen (345 U. S. 571, supra), the court had earlier remarked that "in dealing with international commerce we cannot be unmindful of the necessity for mutual forbearance if retaliations are to be avoided; nor should we forget that any contact which we hold sufficient to warrant application of our law to a foreign transaction will logically be as strong a warrant for a foreign country to apply its law to an American transaction" (p. 582).
We will not impute to Congress  unless the intention is clearly expressed (cf. Foley Bros. v. Filardo, 336 U. S. 281, 285-286)  a concern to deal with the labor relations of alien seamen on foreign flag vessels, owned by foreign nationals, throughout the world or even while they are in American waters. The fact that our American laws apply to crews, no matter what their nationality, employed on American-owned vessels does not militate against our conclusion. It is the proper concern of Congress in passing labor laws to regulate and control conditions on American ships while they are in American waters, as well as while they are on the high seas and in foreign ports.
A completely different case is presented where the ship, flying a foreign flag of convenience, is actually owned and controlled by American nationals. In such a case  and this is the sort of case which is relied upon to support the argument and the conclusion that the National Labor Relations Act has given the board jurisdiction (see, e.g., West India Fruit & S. S. Co., 130 NLRB No. 46, 47 LRRM 1269; Peninsular & Occidental S. S. Co., 120 NLRB 1097, 42 LRRM 1113; Navios Corp. v. National Mar. Union, 402 Pa. 325, cert. den. 366 U. S. 905)  the ship may, in a very real sense, be regarded as sufficiently "American" to justify the invocation of the Federal statute.[1]
*230 It has been urged that, even though it may ultimately be decided that the National Labor Relations Act does not apply to cover the controversy here involved, the pre-emption principles enunciated by the Supreme Court require that this matter be initially presented to the National Labor Relations Board. (See, e.g., San Diego Unions v. Garmon, 359 U. S. 236, 244-245; Dooley v. Anton, 8 N Y 2d 91.) This is clearly not a Garmon or a Dooley type of situation in which the courts must yield to the exclusive authority vested in the National Board over conduct arguably an unfair labor practice or protected activity, under the Act. If there is "arguability" here, it is not as to whether there was an unfair labor practice or protected activity, but rather as to the very scope and reach of the Federal statute itself. In other words, as we have already stated, the question here is whether the Act applies at all to a strike or controversy arising out of the organization of the crew of a foreign flag vessel, owned and controlled by foreign nationals and manned by a foreign crew recruited abroad and serving under foreign articles executed abroad.
In point of fact, in the Benz case (353 U. S. 138, supra), the Supreme Court actually passed upon the issue whether the Act applied to the foreign flagship there involved. Such a determination could not have been made if the pre-emption doctrine were applicable, since that doctrine precludes federal courts  including the Supreme Court  as well as state courts, from taking jurisdiction over activities which arguably involve an unfair labor practice or protected conduct. (See San Diego Unions v. Garmon, 359 U. S. 236, 244-245, supra; Plumbers' Union v. Door County, 359 U. S. 354.) But courts, neither state nor federal, need step aside to permit the National Labor Board to pass upon questions regarding the scope and coverage of the Act. The board has no special competence in this area, and questions concerning jurisdiction are not its exclusive concern.
In sum, therefore, it is our opinion that the National Labor Relations Act does not apply to a foreign flagship owned by foreign nationals, that the board does not have jurisdiction and that such a determination may in the first instance be made by a state court.
*231 As to the further contention advanced by the defendants that section 876-a of the Civil Practice Act bars issuance of an injunction in this case, it is necessary merely to say that, since, as found by the courts below, the defendants' conduct was for an illegal purpose and the means employed by them to accomplish that purpose unlawful (see, e.g., Southern S. S. Co. v. Labor Bd., 316 U. S. 31, 38 et seq.; Simpson v. Hamburg-Amer. Line, 1939 A. M. C. 1469, 1480), the injunction issued by Special Term, as modified by the Appellate Division, may not be successfully attacked as impermissible. (See, e.g., Goodwins, Inc., v. Hagedorn, 303 N.Y. 300, 305-306; Dinny & Robbins v. Davis, 290 N.Y. 101.)
We would affirm the judgment appealed from.
Judgment reversed, etc.
NOTES
[1] There can be no doubt that in the cases cited the operative fact was ownership by American nationals. Thus, in the West India case (130 NLRB No. 46), not only does the board's prevailing opinion remark and stress again and again the vessel's American ownership (e.g., pp. 3, 15, 24, 25, 27, 32), but the dissenting opinion in so many words notes that the majority "have determined that, pursuant to Section 2 (6) and (7), the jurisdictional reach of the Act extends to the operations of American shipowners who register their vessels with, and fly the flags of, foreign nations, and that the policies of the Act will be effectuated by asserting jurisdiction over these shipowners and their operations" (p. 43).