**CHICAGO AND ILLINOIS MIDLAND RAILWAY CO., a Corporation, Plaintiff-Appellee,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN et al., Defendants-Appellants.**

Nos. 13943, 13944.

United States Court of Appeals Seventh Circuit.

March 8, 1963.

Rehearing Denied April 30, 1963.

---

Paul W. Gordon, Jr., Harvey B. Stephens, Springfield, Ill.; Louis F. Knoblock, Peoria, Ill., Brown, Hay & Stephens, Springfield, Ill., of counsel, for appellants.

Hugh J. Graham, Jr., Springfield, Ill., for appellee.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Defendants-appellants [1] prosecute this appeal from an order of the District Court granting a preliminary injunction in an action brought by Chicago and Illinois Midland Railway Co., plaintiff-appellee, seeking injunctive relief and damages. The order, which replaced an earlier restraining order was entered after the court heard the testimony of witnesses for both the plaintiff and the defendants. It enjoins the defendants from participating in, or inducing any other employee of the plaintiff to participate in, a work stoppage or other concerted action designed to interrupt or impair the operation of plaintiff's railroad, including its Havana Coal Transfer Plant.[2]

The record discloses that plaintiff operates a railroad which is engaged in interstate commerce. North of Havana, Illinois, along the Illinois River, the plaintiff operates a plant at which coal is transferred from railroad cars onto barges for shipment by water. The plant includes docks, an unloading area, and a yard or number of railroad tracks onto which the coal cars are switched to await unloading. The coal is loaded on barges operated by two companies, one of which is Mississippi Valley Barge Lines.

During the period here involved a labor dispute existed between the barge line and the Marine Engineers Beneficial Association, a union organization. That union commenced picketing on the river Sunday, September 9, 1962. On Monday, September 10, 1962, it established picket lines at the various entrances to plaintiff's Havana plant, including those at each end of a viaduct under which plaintiff's switch engines passed.

Members of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Midland Lodge No. 700, handle the operation of transfer of the coal from the railroad cars to the barges. Twenty men are a full crew on a shift in this operation. Members of the other four defendant Brotherhoods operate the trains

---

1. The defendants-appellants are: Brotherhood of Railroad Trainmen; Brotherhood of Locomotive Firemen and Enginemen, Crystal Lodge No. 408; Brotherhood of Locomotive Engineers, W. J. Hemphill Division No. 460; Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, Midland Lodge No. 700; Brotherhood of Railway Carmen of America, Midland Lodge No. 338; the officials of said Brotherhood and Locals; and members thereof.

2. The injunctive portion of the order enjoins defendants from: "(1) calling or continuing or encouraging or participating in any strike, work stoppage, slow down or other collective or concerted action designed to interrupt, retard or in any way impair the operation of plaintiff's railroad (including, but not in limitation thereof, operation of the Havana Coal Transfer Plant) or any part thereof; (2) interfering with ingress to or egress from such premises; (3) inducing, individually or collectively, any other employee or class or group of employees of the plaintiff, to perform any of the foregoing acts; (4) provided, however, that nothing in this order shall be construed to require an individual employee to render labor and service without his consent, nor shall anything in this order be construed to make quitting of his labor by an individual employee an illegal act."

in and out of the plant and in switching cars to and from the docks, in the yards of the plant. A crew of trainmen for a shift on this operation is three men; an engineer, a fireman, and a carman.

Only 10 of the employees engaged in the transfer operation reported for work on Monday, September 10th. And due to failure of all but one or two of those employees to report for work from September 10th until September 14th, and the continuing failure of members of train crews to report for work, plaintiff was unable to operate any shift at its Havana plant from September 10th to September 17th. Operation was then partially resumed but without the use of members of the defendant Firemen and Enginemen's union. Those employees were still failing to report for work at the time the preliminary injunction issued, September 21, 1962.

It is clear from the record that the failure of employees to report was due to their refusal to cross the picket lines. There was conflict in the testimony with respect to whether officers of the Brotherhoods instructed their members not to cross the picket lines. And although some of the employees testified they refused to cross the picket lines because of fear of the possibility of bodily harm, others testified that they were instructed by Brotherhood officials to honor the picket lines.

The basic issues presented by defendants' contentions on appeal are (1) whether the District Court had jurisdiction to grant injunctive relief, and, if so, (2) whether the court abused its discretion in granting the preliminary injunction.

■■ Our disposition of this appeal in so far as factual issues bearing upon the jurisdictional question are concerned must rest upon our appraisal as to whether the findings of the District Court as recited in its order are supported by substantial evidence adduced on the applica-

tion for the preliminary injunction. On the second issue the scope of our review is limited to the determination of whether that proof clearly establishes an abuse of discretion. Mytinger & Casselberry, Inc. v. Numanna Laboratories Corp., 7 Cir., 215 F.2d 382, 384.

■ So prefacing our appraisal of the record before us we conclude from its examination that there is substantial evidence to support the conclusion that the refusal to cross the picket lines was concerted action induced by the defendants—that plaintiff's employees were persuaded by the defendants to honor the picket lines as a matter of union principle. Determination of that question, like any other issue of fact, requires a balancing of credibility, persuasiveness and weight of evidence. It is to be decided by the trial court and that court's decision, under general principles of appellate review, should not be disturbed unless clearly erroneous. Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 339 U.S. 605, 609–610, 70 S.Ct. 854, 94 L.Ed. 1097.

We proceed to consideration of the question of whether the court's exercise of jurisdiction to grant injunctive relief was based on the application of correct legal criteria.

■ Jurisdiction of a United States District Court to grant injunctive relief to restrain interference with an interstate common carrier's performance of its duty under the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.) to furnish adequate transportation facilities reasonably required in the interest of public convenience and necessity rests on the basis that such a case is one arising under a law of the United States. Toledo, P. & W. R. R. v. Brotherhood of Railroad Trainmen, 7 Cir., 132 F.2d 265, 269; [3] Brotherhood of Railroad Trainmen v. New York Central Railroad Company, 6 Cir., 246 F.2d 114, 121. Unless the jurisdiction so based has been expressly

3. Reversed on other grounds, the Supreme Court expressly pretermitting the jurisdictional issue. Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27 v. Toledo, P. & W. R. R., 321 U.S. 50, 54, 64 S.Ct. 413, 88 L.Ed. 534.

abrogated by or must necessarily be limited to accommodate to a congressional mandate found to exist in some other statutory enactment it remains intact.

Defendants rely upon the prohibitions of the Norris-LaGuardia Act as expressly withdrawing from the District Court any jurisdiction to grant injunctive relief in the instant case. The defendants contend the refusal of plaintiff's employees to cross the picket line established by the marine engineers' union in connection with that union's dispute with the barge line operator is a matter involving or growing out of a labor dispute within the purview of Section 4 of the Norris-LaGuardia Act (29 U.S.C.A. § 104) and therefore the District Court was without jurisdiction to enjoin the defendants. The defendants seek to avoid the impact of those decisions, such as Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, which recognize that there is need to accommodate Norris-LaGuardia to the Railway Labor Act (45 U.S.C.A. § 151 et seq.) so that the obvious purpose of each of these statutes adopted as a pattern of labor legislation is preserved, by their contention that it was incumbent upon the plaintiff to first attempt to confer with the defendants, to comply with the first and second paragraphs of Section 152 of the Railway Labor Act (45 U.S. C.A. § 152), before resorting to injunctive relief. But defendants overlook the fact it was they who acted to disturb the *status quo*, without attempt to comply with Railway Labor Act provisions, by inducing concerted action by the plaintiff's employees to honor the picket lines. Thus defendants' reliance upon Rutland Railway Corp. v. Brotherhood of Locomotive Engineers, 2 Cir., 307 F.2d 21, is misplaced. In Rutland the railroad altered the *status quo* by reducing and rescheduling freight runs so as to eliminate a number of jobs and change the home terminals of some of the trainmen whose jobs were not eliminated. In Rutland the disagreement was characterized (307 F.

2d p. 33) as being "whether the railroad has the unilateral right to make those changes without negotiating about them with the brotherhoods". It was the failure of a railroad, taking such action, to first confer with the brotherhoods which the Court there found required the application of the "clean hands" provision of the Norris-LaGuardia Act[4] to bar injunctive relief to halt the resulting strike or work stoppage. In the instant case it appears from the record made on the application for the preliminary injunction that the defendants unilaterally induced concerted action resulting in a work stoppage without making an attempt to confer or negotiate. Whether a picket line should be crossed may well present or constitute a labor dispute. But here the defendants by their actions resolved an incipient dispute into a *fait accompli*. On Monday, September 10th, when the picketing of the entrances to plaintiff's Havana plant commenced, the defendants by unilateral action resolved what might have required conference as a labor dispute by converting it into a work stoppage which interfered with the plaintiff's performance of its duties under the Interstate Commerce Act—a law of the United States. In our opinion the plaintiff was not required to confer about or negotiate the underlying basis for the unilaterally imposed work stoppage as a condition precedent to obtaining injunctive relief to halt it. The plaintiff had "clean hands". And whatever application Norris-LaGuardia, considered alone, might have had must be accommodated to the equally important purpose of the Railway Labor Act to avoid any interruption of transportation and attendant injury to the public because of a "minor" dispute.

We conclude that the District Court, in the circumstances presented by the record before us, had jurisdiction to grant a preliminary injunction and, on the showing made with respect to the factors otherwise requisite to the granting of such relief, no basis exists for a conclusion that the granting of the prelim-

4. Section 8 of the Norris-LaGuardia Act; 29 U.S.C.A. § 108.

inary injunction was a clear abuse of discretion.

We do not, of course, express or intimate any opinion on the merits. Apart from the question of jurisdiction, the only issue open to our consideration in this appeal is whether the District Court abused its discretion in granting the preliminary injunction. As Chief Judge Major so aptly observed in Mytinger & Casselberry, supra, (215 F.2d p. 384) "this court is not authorized to reverse or modify such a decree unless such abuse is clearly shown". Determination of the merits of the case must await the trial of the cause.

The order appealed from is affirmed.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

I am unable to agree with the views of the majority in this case.

The United States Supreme Court has said that the Norris-LaGuardia Act was enacted " * * * because Congress was intent upon taking the federal courts out of the labor injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." Marine Cooks and Stewards v. Panama S.S. Co., 362 U. S. 365, 369, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960).

With deference to the majority, I find it difficult to conclude from the opinion whether this Court is saying that because there is no labor dispute between the plaintiff railroad and its employees the Norris-LaGuardia Act does not apply and the District Court therefore had jurisdiction to issue the injunction to prevent "interference with [a] * * * common carrier's performance of its duty under the Interstate Commerce Act * * * to furnish adequate transportation facilities," or whether it bases its affirmance of the District Court's injunction on the premise that there is a "minor" dispute between the railroad and its employees within the meaning of the Railway Labor Act and therefore sec-

tion 4 of the Norris-LaGuardia Act is inapplicable.

In either circumstance, I do not think that there is a dispute between the railroad and the Brotherhoods, major or minor, within the meaning of the Railway Labor Act. Accordingly, the Act should not be used to circumvent the prohibition of section 4 of the Norris-LaGuardia Act. On the other hand, I think this is a case *growing out of* a labor dispute and therefore section 4 does prevent the issuance of any injunction, since there is no semblance of findings in the District Court's order that could give it authority to issue the injunction under the provisions of the Norris-LaGuardia Act.

It seems to me that the proper approach to this case is not to discover whether the District Court had jurisdiction to issue the injunction, but rather to ascertain whether something exists in the fact situation that exempts it from the application of section 4 of the Norris-LaGuardia Act. But even absent the question of the applicability of the Norris-LaGuardia Act or the Railway Labor Act to the facts of this case, I do not think the District Court had jurisdiction to issue the injunction in question.

I believe that reliance for jurisdictional purposes on a union's interference with a common carrier's obligation to furnish adequate interstate transportation and shipping facilities is unwarranted and the practice, if sanctioned, renders nugatory the prohibitory sections of the Norris-LaGuardia Act. Obviously all labor matters over which the Congress and the federal courts have jurisdiction involve interstate commerce to some degree since the federal government's authority over them arises out of the Commerce Clause of the Federal Constitution. Hence, a strike or a work stoppage that does not impede that commerce in some way is an impossibility. I am not persuaded to the majority view on this point by anything found in Brotherhood of Rail. Train. v. New York Cent. R. Co., 246 F.2d 114 (6th Cir., 1957); or Toledo, P. & W. R. R. v. Brotherhood of R. R. Train., 132 F.2d 265

(7th Cir., 1942), reversed 321 U.S. 50, 54, 64 S.Ct. 413, 88 L.Ed. 534 (1942). I would adhere to the dissenting views expressed by Mr. Justice, then Judge, Minton in the latter case as to the lack of jurisdiction of the District Court to grant the injunction on the interstate commerce grounds. See also, the dissent of Mr. Justice, then Judge, Stewart in the former case.

I believe the more important questions, however, are (1) whether the Railway Labor Act applies to the facts of this case, and (2) if it does not, whether section 4 of the Norris-LaGuardia Act prevents the issuance of the injunction.

Section 2 of the Railway Labor Act, 45 U.S.C. § 151a, enumerates the disputes to which the Act applies as "all disputes concerning rates of pay, rules, or working conditions" and "all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

I do not see how the employees' refusal to go through the picket line and hence not report for work at the yard facilities can be said to be a dispute between the railroad and its employees relating to "their own contract or their own working conditions." Northwest Airlines, Inc. v. Transport Workers Union, 190 F. Supp. 495, 498 (D.C.W.D.Wash.1961).

The acts of the employees and their Brotherhoods in the instant case were not motivated by any dispute they have with the railroad growing out of "grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." Accordingly, there could not have existed a "minor" dispute requiring the parties under the Railway Labor Act to negotiate and confer, unless it can be said that a railway labor organization must "negotiate" before respecting another union's picket line.

Here, there was undisputed evidence that violence was threatened by the pickets and that on one occasion a gun was fired into the cab of a locomotive used by the railroad's employees. Aside from the traditional respect shown by one union to another's picket line, this violence and threat of violence furnished additional reasons for the Brotherhoods' suggestion that the picket line not be crossed (although the evidence that the Brotherhoods suggested it is so weak that I think it could be said the District Court's findings in this regard were clearly erroneous).

In sum, it seems to me on this point that the refusal of the employees to cross the picket line under the circumstances was a non-negotiable dispute, if it was a dispute at all, and in any event it was not a dispute cognizable under the Railway Labor Act.

Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, reads:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case *involving or growing out of any labor dispute* to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment; * * *." (Emphasis supplied.)

Section 13 of the Act, 29 U.S.C. § 113 (c), defines a "labor dispute" in these terms:

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employee.*" (Emphasis supplied.)

Here, there was undeniably a labor dispute between the Marine Engineer's Beneficial Association and the Mississippi Valley Barge Lines. The picket line es-

tablished at the railroad yard entrances was a result of this dispute; therefore the "concerted" refusal to cross the picket line gave rise to a case "growing out of a labor dispute."

As I read the Norris-LaGuardia Act, it does not deal with labor disputes as such, but with acts and events involving or growing out of labor disputes. Here, the acts and events, i. e., the refusal by the employees to cross the picket line established by the Marine Association, grew out of a labor dispute between that Union and the Barge lines. Hence, section 4 of the Norris-LaGuardia Act prevented the issuance of what I construe as a mandatory injunction commanding the railroad's employees to go through the picket line regardless of consequences.

I respectfully dissent, and would reverse.