Ronald L. TODD et al., Plaintiffs-Appellees,

v.

JOINT APPRENTICESHIP COMMITTEE, etc., and Bethlehem Steel Company, and Local Union No. 1, etc., et al., Defendants-Appellants.

Nos. 14527-14529.

United States Court of Appeals Seventh Circuit.

May 26, 1964.

Jerome A. Frazel, Jr., George S. Hoban, Bernard M. Mamet, Paul R. Conaghan, Chicago, Ill., for appellant.

William R. Ming, Jr., George N. Leighton, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

These consolidated appeals are presently before us on three motions to remand this cause to the district court to dismiss alleging that the issues raised have become moot. We feel constrained to hear these motions in advance of the case on the merits because of the critical issues raised therein.

On October 26, 1962, defendants Paschen Contractors, Inc. and Peter Kiewit Sons' Co. (Contractor) entered into Contract No. GS-5PC-1178 to construct

244

a United States Court House and Federal Office Building in Chicago, Illinois, to be paid for from and with public funds of the United States.

The construction of such building was commenced shortly thereafter and has continued in progress down to the present time.

Contractor entered into a subcontract with defendant Bethlehem Steel Company (Bethlehem) for the fabrication and erection of structural steel on such project. Bethelehm was engaged in such work in 1963 during the period when the events complained of herein took place.

On October 23, 1963, Bethlehem completed all work on the project, including steel erection, called for in its subcontract. It has had no employees working at the construction site since said date of completion.

Iron Workers Bridge and Structural Union, Local No. 1 and Iron Workers District Council of Chicago & Vicinity, with certain of their respective officers and representatives, defendants (collectively referred to as Union), had a collective bargaining agreement with Bethlehem whereby it was the sole supplier of iron workers to Bethlehem on said project.

Union is a voluntary unincorporated association of 2600 or more persons, including apprentices, engaged in working as journeymen iron workers or apprentice iron workers in the Chicago area.

Contractor's Contract No. GS–5PC–1178 and Bethlehem's subcontract both specifically included by reference the terms of Presidential Executive Order No. 10925 of March 6, 1961. This Executive Order, *inter alia*, is generally directed against racial or other discrimination in the performance of governmental contracts such as the construction project under present consideration.

One of the provisions of Contract No. GS–5PC–1178 was that apprentices "will be permitted to work only under a bona fide apprenticeship program" registered and recognized as therein set out.

At all times material herein, there was in full force and effect in Illinois such a bona fide apprenticeship program for iron workers. Joint Apprenticeship Committee of the Steel Workers of Chicago and International Association of Bridge, Structural and Ornamental Iron Workers Local Union No. 1 and its officers and members, defendants (collectively referred to as Joint Committee), was responsible for the administration of the iron worker apprenticeship standards in the Chicago area.

Joint Committee was composed of three representatives of Chicago Steel Erectors and three representatives of Union, selected by their respective organizations. Defendant Edmund D. Flood is the Apprentice Co-Ordinator of the Joint Committee.

The standards of the iron worker apprenticeship program had proper approval by the United States Department of Labor, of which defendant Alvin Dost was Regional Director.

At all times material herein, defendant Dominic Tesauro was Regional Administrator, General Services Administration (GSA), and was charged with the enforcement and administration of the construction contract for the United States.

The Board of Education of the City of Chicago (Board of Education), defendant, is a municipal corporation of Illinois operating a public school system in the City of Chicago. Board of Education is a party solely because of its participation in the apprenticeship training program.

In accordance with the requirements of Presidential Executive Order No. 10925, Contractor reported to GSA that on March 25, 1963 there were no Negroes, either journeymen or apprentices, in the Union. Bethlehem reported to GSA on May 15, 1963 that as of April 14, 1963, it had a total of 101 employees on the project site of whom 79 were structural iron workers, 6 of these being apprentices, and that none of such employees was a Negro. Bethlehem reported that its peak employment would

probably be reached on about May 22, 1963. Later, Bethlehem reported to GSA that as of June 16, 1963, it had 146 employees on the project site of whom 128 were structural iron workers, 8 of these being apprentices, and that none was a Negro.

On May 23, 1963, on demand by GSA, Bethlehem requested of Union written assurances that Union would comply with the non-discrimination policies of Executive Order No. 10925. Union did not provide any such statment. At about the same time, Union informed Tesauro, Bethlehem and Dost that it would not accept Negro structural iron workers or apprentices for work on this construction project.

Ronald L. Todd, Michael Cochran and James Hill, plaintiffs, were male Negroes ranging in age from 18 to 23 years. On about June 7, 1963, plaintiffs were referred to Contractor by the Illinois State Employment Service and the Department of Labor as applicants for employment as iron worker apprentices training, after having been examined and found to be possessed of both aptitude for and interest in the trade.

On about June 24, 1963, Bethlehem examined plaintiffs and found them to be qualified to be hired as apprentice iron workers. On the same date, each of plaintiffs properly executed and filed an application for indenture as an apprentice iron worker with Joint Committee.

On about June 28, 1963, Bethlehem stated it was in a position to give two of plaintiffs immediate employment on the construction project if they were indentured by Joint Committee and requested Joint Committee to indenture two of plaintiffs. None of plaintiffs was ever examined by Joint Committee or indentured or submitted to Bethlehem for employment.

Beginning about July 1, 1963, Tesauro began a series of unsuccessful attempts to induce Joint Committee to indenture two of the three plaintiffs. Bethlehem unsuccessfully renewed its request to Joint Committee on July 12, 1963. By letter of July 15, 1963, Joint Committee again denied the request and offered to supply any additional apprentices required from among the other applicants in its files. At this time, Joint Committee claimed to have on file 150 applicants who had applied before plaintiffs. Many of these were found to be unavailable when subsequently called.

On about July 19, 1963, Tesauro referred the whole matter to the President's Committee on Equal Job Opportunity. On September 23, 1963, that Committee reported to Tesauro that it would take no action.

As of September, 1963, there were 853 persons employed on the construction site; of these 171, or approximately 20%, were Negroes. Of these 171 Negro employees, 43 were journeymen, 11 were apprentices and the remainder were laborers. Of the sixteen crafts then working on the construction site, only Union and Joint Committee were not represented by Negro employees.

With the foregoing factual situation present, on September 26, 1963, plaintiffs filed their complaint against defendants in the district court. The complaint alleged in substance:

(1) Provisions of Contract No. GS–5PC–1178.

(2) Provisions of the iron workers apprenticeship program.

(3) That plaintiffs were native born citizens and Negroes.

(4) That plaintiffs and all persons who constitute the class to which they belong were eligible to qualify for the apprenticeship training program; that they made application therefor and were denied certification solely because of their race and color.

(5) That in April, 1963 plaintiffs sought employment on the construction project from Bethlehem, which was denied because they were Negroes.

(6) That plaintiffs brought the action on behalf of themselves and the class to which they belong and

have failed to secure enforcement of their rights to employment under the terms of Contract No. GS–5PC–1178.

(7) Provisions of Executive Order No. 10925.

Plaintiffs prayed for the following relief in their complaint:

"Wherefore, the plaintiffs respectfully pray this Court to enjoin the defendants and each of them from proceeding with the performance of Contract No. GS–5PC–1178 unless and until plaintiffs and each of them is duly and regularly employed as an iron workers apprentice or in the alternative that this Court enjoin and restrain the defendants and each of them from making or receiving any payments on account of such contract unless and until plaintiffs and each of them is duly and regularly employed as an iron workers apprentice."

The trial court held an extended hearing on the issue of a preliminary injunction. Some of the defendants introduced no evidence. The evidence considered by the trial court related primarily to Contract No. GS–5PC–1178 and the failure of Bethlehem to employ plaintiffs on that construction project.

On October 11, 1963, Bethlehem filed its motion for judgment at the close of all evidence, in part on the ground that the issues were moot since no more apprentice iron workers would be employed on the job site in question, its subcontract being substantially completed at that time.

On October 16, 1963, the district court rendered an able, extensive and comprehensive opinion. This is reported in Todd v. Joint Apprenticeship Com. of Steel Wkrs. of Chicago, N.D.Ill.E.D., 223 F.Supp. 12, and reference thereto is now made.

On October 22, 1963, respective counsel of the parties appeared before the trial court for the purpose of setting bond, the entry of formal findings of fact and conclusions of law and a formal decree. At that time, Bethlehem advised the court that "all work of Bethlehem on the site in question will be concluded tomorrow." The court then stated, "Very well, the record may so show."

On October 25, 1963, Bethlehem filed affidavits with the trial court that all work in fulfillment of its subcontract on the construction site was completed on October 23, 1963. No one disputed that such was the fact.

On November 8, 1963, the trial court filed its comprehensive findings of fact, conclusions of law and draft of preliminary injunction and adopted them as its own and ordered them entered nunc pro tunc as of October 16, 1963.

In sum, the findings recited the factual history of the case; that there had been no discrimination against plaintiffs by Contractor or Bethlehem; that there had been racial discrimination against plaintiffs by Union and Joint Committee; and that Bethlehem's rejection of plaintiff Michael Cochran because of his lack of qualifications was not discriminatorily motivated.

The trial court concluded, inter alia, that this suit was properly brought as a class action and that unless restrained Union and Joint Committee would continue their discriminatory practices against plaintiffs and their class; that plaintiffs Todd and Hill were entitled to a preliminary injunction requiring Bethlehem to employ them as apprenticeship iron workers when properly certified by Union and Joint Committee.

A decree of preliminary injunction was entered accordingly.

■ Our study of the record convinces us that plaintiffs, by this action, sought to enjoin defendants from proceeding with the performance of Contract No. GS–5PC–1178 unless and until they were regularly employed as iron worker apprentices by Bethlehem on this construction site; or, in the alternative, restraining further payments to or by Contractor and Bethlehem until such employment was granted.

Bethlehem completed all work on its subcontract on October 23, 1963. At the time the preliminary injunction was entered on November 8, 1963, even though *nunc pro tunc* as of October 16, 1963, the matter in controversy had become moot. Bethlehem had no other steel erection activities in the Chicago area.

Plaintiffs [1] contend that the matter should now go back to the trial court for further hearing on a permanent injunction, including the issue of discrimination as it may relate to other construction contracts not now under consideration. This would require the determination of an abstract question. This we cannot do. The subject matter of the litigation is no longer an actual controversy. The time for determination of the questions involved in this action has passed. No relief within the scope of the complaint could now be granted. Johnson-Kennedy Radio Corp. v. Chicago Bears F. Club, 7 Cir., 97 F.2d 223 (1938). See also Amalgamated Ass'n of Street, etc., Employees v. Wisconsin Employment Relations Board, 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389 (1951).

While we hold no brief for the character of discrimination charged herein and found by the district court, we do not reach the question of the validity of the trial court's findings and conclusions and its judgment and decree based thereon. In the instant case, we have before us merely a temporary injunction applicable only to the specific construction project to which it is addressed

Further, we do not decide here whether the district court had authority to apply an injunction retroactively by the issuance of a *nunc pro tunc* order.

■ We follow the established practice of the Supreme Court that when an issue or controversy becomes moot prior to or during an appeal that all prior orders should be vacated and the cause remanded with instructions to dismiss.

Brotherhood of Railroad Trainmen v. Chicago & I. M. R. Co., 375 U.S. 18, 84 S.Ct. 61, 11 L.Ed.2d 39 (1963); [2] Davis v. Soja, 374 U.S. 495, 83 S.Ct. 1863, 10 L.Ed.2d 1043 (1963).[3]

The judgment and decree of the United States District Court for the Northern District of Illinois entered November 8, 1963, *nunc pro tunc* as of October 16, 1963, are vacated and this case is remanded to such court with directions to dismiss the complaint as to all defendants as moot.

Judgment vacated and case remanded with instructions.

---

1. Plaintiff Michael Cochran did not join in this appeal.

