NORTHWEST AIRLINES, INC.,
Plaintiff,

v.

TRANSPORT WORKERS UNION OF
AMERICA AFL–CIO and its Air Transport Local 523, Clifford W. Scott,
George Hedrick and A. A. Krucovsky,
individually and as Officers or Agents
of said Union and Local No. 523, and
as representatives of a class consisting
of all Airline Navigators who are employees of plaintiff for whom said
Transport Workers Union of America
AFL–CIO or said Air Transport Local
523 is the duly designated representative, and each of them, Defendants.

No. 5202.

United States District Court
W. D. Washington, N. D.
Jan. 23, 1961.

**496**

Paul W. Steere, of Skeel, McKelvy, Henke, Evenson and Uhlmann, Seattle, Wash., and Curtis Roy, of Dorsey, Owen, Barber, Marquart & Windhorst, Minneapolis, Minn., for plaintiff.

Joseph S. Kane and John D. Spellman, of Kane & Spellman, Seattle, Wash., for defendants.

LINDBERG, Chief Judge.

This action was instituted to enjoin the defendants from engaging in a concerted refusal to report for work as ordered by their employer. Jurisdiction is allegedly founded upon 45 U.S.C.A. § 151 et seq., and 28 U.S.C. § 1331.

The plaintiff-employer is a certified common carrier by air, engaged in interstate and foreign commerce and providing both domestic and overseas service. The defendant-unions are the certified bargaining representatives of employees performing the service of airline navigators aboard the plaintiff's overseas flights. The presence of a navigator on these flights is required by federal law.

Prior to the events here involved the plaintiff and defendant-union were parties to a collective bargaining agreement which specified wages, working conditions and grievance procedures. This agreement was executed in conformity with the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., which is applicable to common carriers by air engaged in interstate or foreign commerce. 45 U.S.C. § 181.

The plaintiff also has a collective bargaining agreement with the International Association of Machinists, AFL-CIO, which covers the recognized craft of Flight Engineers. This agreement is presently open for negotiation on a number of issues, some of which are before the National Mediation Board although others have been released in accordance with the Railway Labor Act. In October, 1960, as a result of the negotiations a labor dispute began to develop between the plaintiff and the Flight Engineers. On or about January 11, 1961 the Flight Engineers struck the plaintiff's properties, withdrew all their members from service on all of plaintiff's aircraft, and placed a picket line around the plaintiff's facilities at the Sea-Tac Airport. As of that date the Navigators honored that strike and have refused to cross the Flight Engineers' picket line although ordered to report for work by the plaintiff.

This much appears undisputed. However, while some of the remaining facts are contested, the uncontroverted portions of the plaintiff's affidavit and complaint as well as the evidence submitted, tend to support the following facts:

The Navigators' refusal to cross the Flight Engineers' picket line was the result of a concerted refusal to work, actively encouraged and directed by officers of the local union and the international. In the event that the Navigators continue in their refusal to report for work the plaintiff will be unable to continue its overseas flights which will cause it irreparable injury and serious inconvenience to the public. The collective bargaining agreement between the plaintiff and the defendant-union, although by its terms to expire on December 31, 1960, is in the course of negotiation without dispute as of yet, and may be considered in force and effect. This last assumption is strenuously contested by the defendants and their arguments seem to have considerable merit. Order of Railroad Telegraphers v. Chicago & N. W. R. Co., 1960, 362 U.S. 330, 80 S. Ct. 761, 4 L.Ed.2d 774. The agreement does not contain a "no-strike" clause nor does it make any reference to the crossing of picket lines.

It is the plaintiff's position that the concerted refusal to work by the Navigators, under directions of their union, violates the collective bargaining agreement and gives rise to a labor dispute which must be resolved by established arbitration procedures, not strike action. 45 U.S.C.A. § 183. The plaintiff contends that until this procedure is followed the defendants may be enjoined. Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 1957, 353 U.S. 30, 77 S.Ct.

635, 1 L.Ed.2d 622; Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 1960, 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379; Northwest Airlines, Inc. v. International Association of Machinists, D.C.Minn.1959, 178 F. Supp. 825; American Airlines, Inc. v. Air Line Pilots Ass'n, D.C.S.D.N.Y.1958, 169 F.Supp. 777.

The defendants, on the other hand, challenge the jurisdiction of the court to issue such an injunction because of the prohibitions of the Norris-LaGuardia Act. 29 U.S.C.A. § 101 et seq.

The plaintiff has conceded that were the parties here involved not governed by the Railway Labor Act, the Norris-LaGuardia Act would deprive the court of jurisdiction in this matter.

At the outset we are confronted with a serious question of jurisdiction, a question which involves the interrelationship of two separate labor enactments.

There is nothing in the Railway Labor Act which explicitly removes labor disputes, in covered industries, from the reach of the Norris-LaGuardia Act. Thus any exemption must be found in judicial interpretations of the two enactments.

There can be little doubt that one of the fundamental purposes of the Railway Labor Act was to minimize crippling strikes in the transportation industry upon which the nation's economy is so dependent. Orderly arbitration procedures have been substituted for, and must precede economic coercion.

The decisions of the United States Supreme Court clearly indicate that the Norris-LaGuardia Act does not deprive the federal courts of jurisdiction to compel compliance with the arbitration procedures of the Railway Labor Act. Virginian R. Co. v. System Federation, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed 789; Graham v. Brotherhood of Locomotive Firemen and Enginemen, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22. See also Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 458, 77 S.Ct. 912, 1 L.Ed. 2d 972.

But, it is equally clear that not every labor dispute in the transport industries may be enjoined. The question of when the court's injunctive powers may be used to prevent a tie-up of transportation facilities frequently depends upon the classification of the labor dispute—is it a "major" or a "minor" labor dispute?[1] When this is the determining factor only those in the latter category may be enjoined under the present state of the law.

The distinction between these two broad categories of labor disputes was well stated by Justice Rutledge in Elgin, J. & E. R. Co. v. Burley, 1945, 325 U.S. 711, at page 723, 65 S.Ct. 1282, at page 1290, 89 L.Ed. 1886:

"In general the difference is between what are regarded traditionally as the major and the minor disputes of the railway labor world. The former present the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid. Because they more often involve those consequences and because they seek to create rather than to enforce contractual rights, they have been left for settlement entirely to the processes of noncompulsory adjustment.

The so-called minor disputes, on the other hand, involving grievances, affect the smaller differences which inevitably appear in the carrying out of major agreements and policies or arise incidentally in the course of an employment. They represent specific maladjustments of a detailed or

---

1. The Flight Engineers are not parties to this action and the plaintiff is not seeking to enjoin their strike, here assumed to be a "major" dispute. Whether or not that strike could be enjoined would depend upon facts not involved in this action. See American Airlines, Inc. v. Air Line Pilots Ass'n, Intern., D.C.N.Y. 1958, 169 F.Supp. 777, 789.

individual quality. They seldom produce strikes, though in exaggerated instances they may do so. Because of their comparatively minor character and the general improbability of their causing interruption of peaceful relations and of traffic, the 1934 Act sets them apart from the major disputes and provides for very different treatment." [2]

Consequently, for the plaintiff to prevail in this action it must appear that the Navigators' refusal to report for work across the Engineers' picket line involved only a "minor" labor dispute. Unless this appears, the Norris-LaGuardia Act denies this court jurisdiction.

The plaintiff argues that the question of whether or not the Navigators are required by their collective bargaining agreement to cross a picket line involves contract interpretation which should be resolved by resort to the arbitration procedures established by the bargaining agreement in conformity with the provisions of the Railway Labor Act. This, they assert, makes it a "minor" labor dispute.

█ It cannot be seriously contended that the inciting cause of the Navigators' refusal to report for work was the existence of some latent dispute as to the terms of their own contract or their own working conditions. Their conduct was motivated solely by a traditional respect of another union's picket line. Clearly the picket line was established by another union, the Flight Engineers, as the result of an admitted "major" labor dispute of several months standing.

The difficulty here comes in attempting to segregate the Navigators' refusal to cross the picket line from the pre-existing "major" dispute in the industry. Even if it is assumed that this refusal does create a grievance concerning the interpretation of their contract, the grievance is on the part of the employer and should be submitted to the Systems Board of Adjustment. This has not been done. Further, any grievance thus engendered is clearly an outgrowth or reaction to the existing "major" dispute. It cannot, in my opinion, be isolated from it.

To ignore the fact that a "major" labor dispute exists within the same industry affecting the same employer and fellow employees, as the plaintiff would have us do, is to ignore the realities of the situation.

A factual pattern such as this fits precisely the statutory definition of a "labor dispute" in the Norris-LaGuardia Act. 29 U.S.C.A. § 113(a).

The cases relied upon by the plaintiff present factual patterns entirely distinct from those involved in the case now before the court. In none of the cases cited was there a pre-existing "major" labor dispute which ignited a secondary "minor" labor dispute.

The court therefore finds that this case does not involve the mere interpretation of an existing labor agreement between the plaintiff and the defendants, but is primarily concerned with what is an incident of a far broader and more serious labor dispute within the industry. As to this underlying dispute the plaintiff does not here seek relief.

Undoubtedly there is a current tendency among the courts to restrict the sweep of the Norris-LaGuardia Act, particularly where it may impliedly conflict with the provisions of later labor acts. Chauffeurs, Teamsters, etc. v. Yellow Transit Freight Lines, 10 Cir., 1960, 282 F.2d 345; American Smelting & Refining Co. v. Tacoma Smeltermen's Union, D.C.W. D.Wash.1959, 175 F.Supp. 750. These decisions, however, do not bear upon the issues presented nor relate to disputes involving common carriers under the Railway Labor Act.

█ Further, a district court should proceed with the utmost caution in ex-

---

**2.** "Minor" disputes are submitted to, and finally determined by, the National Railroad Adjustment Board. "Major" dis- putes must be processed through the Mediation Board before strike action may be sanctioned. 45 U.S.C.A. § 155.

panding the decisions of the Supreme Court when the effect would be to erode away the clear and unmistakable meaning of a considered legislative caveat such as the Norris-LaGuardia Act. See Baltimore Contractors, Inc. v. Carpenters' Dist. Council, etc., D.C.E.D.La.1960, 188 F.Supp. 382.

It is my conclusion that this court is without jurisdiction to grant the relief requested.

Therefore, the application for an injunction is denied, the temporary restraining order, heretofore entered, is dissolved, and the defendants' motion to dismiss is granted.

The defendants will submit appropriate findings of fact and conclusions of law.