BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al., Appellants,

v.

FLORIDA EAST COAST RAILWAY COMPANY et al., Appellees.

No. 21060.

United States Court of Appeals Fifth Circuit.

June 8, 1965.

674

Thomas W. McAliley, Alan R. Schwartz, Nichols, Gaither, Beckham, Colson & Spence, Miami, Fla., for appellant.

William P. Simmons, Jr., Shutts, Bowen, Simmons, Prevatt, Boureau & White, Miami, Fla., for appellee, Florida East Coast Ry. Co.

Granville M. Alley, Jr., Denzil Y. Causey, Jr., Tampa, Fla., Neal Rutledge, Miami, Fla., for appellee, Broward County Port Authority, Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., of counsel.

Before JONES and BELL, Circuit Judges, and HUNTER, District Judge.

GRIFFIN B. BELL, Circuit Judge:

■ This is an appeal by employees of the Broward County (Florida) Port Authority and their unions from an order of the District Court enjoining the Port Authority and its employees from refusing to switch cars of the Florida East Coast Railway. The controlling question presented is whether the injunction as against the employees represented by appellants is barred by the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq. We hold that it is and reverse.

In January 1963, certain employees of the Florida East Coast Railway went out on strike. The strikers set up picket lines at various points on FEC property. One area picketed was FEC's interchange track which connects FEC's tracks with those of the Broward County Port Authority. The Port Authority operates an independent belt line for the purpose of transferring cars from trunk lines to the dock facilities owned and operated by the Authority at Port Everglades. The Port Authority is under contract with FEC to switch FEC cars from the interchange track to the docks. After the picket lines went up at the interchange track, the Port Authority switching crews refused to cross the lines to pick up FEC cars.

The FEC, which was continuing to operate despite the strike against it, sought to compel the Port Authority to carry out its contractual obligations and its duty under the interchange section of the Interstate Commerce Act, 49 U.S. C.A. § 3(4).[1] The Port Authority itself commenced a suit to compel its em-

---

1. "§ 3, par. (4). Interchange of traffic. All carriers subject to the provisions of this chapter shall, according to their re-

spective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respecting

ployees to service FEC tracks, but this action was dismissed without prejudice. The FEC then brought the present action against the Port Authority seeking an injunction requiring the Port Authority to switch its cars. The District Court entered a preliminary injunction prohibiting the Port Authority "and all of its officers, agents, servants, employees and attorneys, and all persons acting in concert and participation with them" from refusing to service the FEC tracks in accordance with the interchange agreement between the two railroads. The effect of the injunction was to require the Port Authority's switching crews to cross the FEC picket line. Consequently, individual members of the switching crews and their unions were permitted to intervene. A second hearing was held at which the intervenors urged, *inter alia,* that the injunction was barred by the Norris-LaGuardia Act. The District Court refused to dissolve the injunction, and the intervening employees and unions have brought the case here.

The Norris-LaGuardia Act, 29 U.S.C.A. § 104, provides:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

"(a) Ceasing or refusing to perform any work * * *."

We begin by noting that the effect of the injunction entered below was to prohibit employees of the Port Authority, including appellants, from refusing to perform work, i. e., refusing to cross the FEC picket line. The injunction specifically binds the Port Authority "and all of its * * * employees." Secondly, there is concededly a labor dispute between FEC and its employees. Under 29 U.S.C.A. § 113(c), the definitional section of the Norris-LaGuardia Act, the term "labor dispute" is broadly defined as any controversy over the terms or conditions of employment regardless of whether or not the disputants stand in the proximate relation of employer and employee.

We also think it is clear that this case involves or grows out of the labor dispute at FEC and that the Port Authority employees are persons interested in that dispute. The Port Authority employees refused to service the FEC interchange track solely because of the strike and picketing at FEC. This litigation would never have arisen were it not for the labor dispute at FEC. The Authority's employees are interested in the dispute in that they are members of the same trade or industry as the striking FEC workers, see 29 U.S.C.A. § 113(b), and desire to make common cause with them by honoring their lawful picket line.

Thus, the literal language of the Norris-LaGuardia Act covers the situation presented here. The oft-stated congressional policy of that act was to prevent injunctive interference in labor disputes and to allow such controversies to be settled through negotiation and the free play of economic forces. 29 U.S.C.A. § 102; Sinclair Refining Co. v. Atkinson, 1962, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440; Order of Railroad Telegraphers v. Chicago & N. W. R. Co., 1960, 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774. This policy finds plain application here, since the effect of the injunction is to nullify the picket line and give FEC an advantage in the dispute it has with its

lines and connecting lines, and for the receiving, forwarding, and delivering of passengers or property to and from connecting lines; and shall not discriminate in their rates, fares, and charges between connecting lines, or unduly prejudice any connecting line in the distribution of traf-

fic that is not specifically routed by the shipper. As used in this paragraph the term 'connecting line' means the connecting line of any carrier subject to the provisions of this chapter or any common carrier by water subject to chapter 12 of this title."

676

employees. See Lee Way Motor Freight v. Keystone Freight Line, Inc., 10 Cir., 1942, 126 F.2d 931, cert. den., 317 U.S. 645, 63 S.Ct. 37, 87 L.Ed. 519, applying the Norris-LaGuardia Act in a comparable factual situation, and cf. Marine Cooks & Stewards, AFL v. Panama S.S. Co., 1960, 362 U.S. 365, 80 S.Ct. 779, 4 L.Ed.2d 797.

■ FEC's primary contention is that even if the Norris-LaGuardia Act would otherwise be applicable, that enactment is superseded by the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., requiring compulsory arbitration of minor disputes. The Supreme Court held in Brotherhood of Railroad Trainmen v. Chicago River & Indiana Railroad Co., 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, that Congress intended that compulsory arbitration under § 3, First, 45 U.S.C.A. § 153(i), of the Railway Labor Act should be the exclusive mode of settling minor disputes, and that consequently a strike over a minor dispute may be enjoined notwithstanding the Norris-LaGuardia Act. Under the Railway Labor Act, minor disputes involve grievances or questions of interpretation of an existing collective bargaining contract; major disputes arise from efforts to change working conditions through the making of a new agreement. 45 U.S.C.A. § 152, sixth, seventh; Elgin, J. and E. R. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, 1894–1895. FEC argues that this case actually involves a minor dispute between the Port Authority and its employees, rather than a major dispute at FEC, and that consequently the refusal to cross the picket line may be enjoined.

■ In our view, this argument ignores the realities of the factual situation before us. It is the FEC that seeks the injunction, not the Port Authority.[2]

Neither the Port Authority nor its switching crews have submitted the controversy to the Railroad Adjustment Board for arbitration, and the switching employees are in no way defeating the jurisdiction of that body. Consequently, the injunction entered below does not operate to preserve the jurisdiction of the Board over any minor dispute between the Port Authority and its employees; it operates to impede the strike over the major dispute at FEC. Thus, the injunction in no way serves the policy of the Railway Labor Act, whereas, as noted supra, it is in direct conflict with the policy of the Norris-LaGuardia Act.

In the present case, the Norris-LaGuardia Act and the Railway Labor Act can be easily accommodated, and this accommodation requires that the injunction entered by the District Court be dissolved. See Northwest Airlines, Inc. v. Transport Workers Union, W.D.Wash., 1961, 190 F.Supp. 495, holding that the Norris-LaGuardia Act prohibited an injunction to require one group of employees to cross a picket line set up by another group of employees of the same employer, and where the refusal to cross the picket line was treated as being a part of the major dispute. But see International Association of Machinists AFL–CIO v. Northwest Airlines, 8 Cir., 1962, 304 F.2d 206, where the major dispute and minor dispute were separated for purposes of the Norris-LaGuardia Act. We hold under the facts of the instant case that the refusal to cross the picket line is a part of the major dispute at FEC.

■ FEC also argues that the Norris-LaGuardia Act has been amended *pro tanto* by the interchange section of the Interstate Commerce Act, 49 U.S.C.A. § 3(4), quoted at note 1 supra. This contention is without merit. Cf. Texas &

2. See Chicago & Illinois Midland Railway Co. v. Brotherhood of Railroad Trainmen, 8 Cir., 1963, 315 F.2d 771, vacated as moot, 375 U.S. 18, 84 S.Ct. 61, 11 L.Ed.2d 39 on the question which would be presented should the Port Authority seek an injunction. See particularly the dissenting opinion on the problem of separating the major dispute from the minor dispute, and accommodating this difficulty with the more specific provisions of the Norris-LaGuardia Act.

New Orleans R.R. v. Brotherhood of Railroad Trainmen, 5 Cir., 1962, 307 F.2d 151. Section 3(4) merely imposes a duty on carriers to provide adequate connecting facilities without discrimination, and does not purport to regulate labor conditions in any manner whatsoever. Again, the clear language of the Norris-LaGuardia Act must control.

In sum, we hold that the Norris-La-Guardia Act is applicable to the present case and is not preempted by any other federal legislation. It follows that the order of the District Court refusing to dissolve the injunction to the extent it is binding on appellants here must be and it is

Reversed.