**NORTHWEST AIRLINES, INC.,**
Appellant,

v.

The **AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,** Appellee.

No. 20677.

United States Court of Appeals, Eighth Circuit.

Dec. 3, 1970.

Bright, Circuit Judge, concurred and filed opinion.

Henry Halladay, Minneapolis, Minn., for appellant.

Robert S. Savelson, New York City, for appellee.

Before VAN OOSTERHOUT, HEANEY and BRIGHT, Circuit Judges.

PER CURIAM.

We are asked to enjoin the Air Line Pilots Association, International, its members, officers and agents from authorizing or taking part in a concerted refusal to cross picket lines established by the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees pending a determination of an appeal from an order of the United States District Court for the District of Minnesota denying appellant's motion for a preliminary injunction. 325 F.Supp. 994.

NWA and ALPA are parties to a collective bargaining agreement which does not expire until June 30, 1971. The agreement is silent as to the right of ALPA to ask its members to respect a sister union's picket lines. The agreement does not have a no-strike clause, but it does provide detailed machinery for the resolution of disputes involving interpretation and application of the agreement.

On July 8, 1970, NWA employees represented by BRAC went on strike and began picketing NWA facilities. The pilots continued to bid and fly available schedules on NWA's system.

On October 8, 1970, ALPA notified NWA that effective October 13, 1970, its members would refuse to cross the BRAC picket lines. This notice was withdrawn on October 12, 1970.

On November 24, 1970, a similar notice was sent by ALPA to NWA. This notice read:

"THIS IS TO ADVISE THAT BEGINNING 0501CST NOV 27 1970 ALL NORTH WEST ORIENT AIRLINES PILOTS [WHO (sic)] ARE REPRESENTED BY THE AIRLINES PILOTS ASSOCIATION INTERNATIONAL WILL REFUSE TO CROSS BRAC PICKET LINES AND WILL NOT OPERATE NORTH WEST ORIENT AIRCRAFT DURING THE CURRENT LABOR DISPUTE ASSOCIATION REPRESENTATIVE AVAILABLE TO MAKE APPROPRIATE ARRANGEMENTS FOR THE ORDERLY SHUT DOWN OF OPERATIONS AIRCRAFT SECURITY AND RETURN HOME TO ALL CREWS AND AIRCRAFT."

Immediately after it received each of the notices that ALPA members would respect the BRAC picket lines, NWA invoked the jurisdiction of the System Board of Adjustment, as established by the parties pursuant to the National Railway Labor Act. The NWA submission stated that a dispute existed between NWA and ALPA arising out of the interpretation and application of the terms of the collective bargaining agreements entered into by the parties.

It stated that the questions and issues were as follows:

"1. Does the System Board of Adjustment (Board) have jurisdiction to determine whether the air line pilots, ALPA and its officers and agents have taken part or engaged in, or threatened to take part or engage in, a strike or concerted refusal to work for NWA, contrary to the provisions of the aforementioned agreements and the Railway Labor Act as incorporated therein?

"2. If Question 1 is answered affirmatively, have the air line pilots, ALPA and its officers and agents taken part or engaged in, or threatened to take part or engage in, a strike or concerted refusal to work for NWA, contrary to the provisions of the aforementioned agreements and the Railway Labor Act as incorporated therein?

"3. If Question 2 is answered affirmatively, what is the appropriate remedy?"

ALPA made no formal response to the submission.

After each submission, NWA asked the United States District Court for the District of Minnesota to enjoin ALPA, its members, officers and agents, from authorizing or taking part in a concerted refusal to cross the picket lines established by BRAC.

On November 26, 1970, the District Court issued a temporary restraining order, stating that the order was to be effective until December 2, 1970, and further stating that it would hold a hearing on NWA's motion for a preliminary injunction on that date.

On December 2, 1970, the court dissolved the temporary restraining order and denied NWA's motion for a preliminary injunction. The court concluded:

"The [plaintiff] has not shown substantial probability of success on the merits. Plaintiff may have shown irreparable injury, though this cannot now be measured in the absence of information as to mutual aid assistance. The granting of the preliminary injunction will substantially impair the interests of the defendant in that for a much longer time will a substantial number of the pilots be unemployed. The public interest has already been affected by limited operations and will be affected unfavorably by a complete shut down. The public interest will, however, be affected favorably if complete airline service is resumed as soon as possible."

This Court must now decide whether it will grant the injunctive relief sought by NWA.

We recently considered a similar problem in Northwest Airlines, Inc. v. International Association of Machinists and Aerospace Workers, AFL–CIO, et al., 442 F.2d 244. We there required the parties to submit the basic issue—"whether IAM, in the light of the no-strike provisions of the bargaining agreement, retains the right to instruct its members to honor the picket lines of a sister Union"—to arbitration under the System Board of Adjustment.

This case is similar to the *IAM* case with two exceptions.

1. In *IAM*, NWA did not take steps to submit the basic dispute to the System Board of Adjustment until some two and one-half months after IAM employees began to honor BRAC picket lines.

2. The contract between NWA and IAM contained an explicit no-strike provision.

In our view, the second distinction may be of some importance in resolving the basic issue. Yet, we feel that NWA is correct in arguing that the ALPA contract can arguably be interpreted to prohibit the Association from instructing its members to respect the BRAC picket lines. The dispute is, thus, in our view, a minor one which must be submitted to the System Board of Adjustment. *See* United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). There, the Court, in a non-Railway Act case, stated:

"An order to arbitrate the particular grievance should not be denied unless

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

We feel the same standard is applicable here. In expressing this view, we refrain from stating any opinion as to the correct interpretation of the collective bargaining agreement.

We, therefore, hold that this basic issue and others collateral to it should be submitted by the parties to the System Board of Adjustment without delay. Specifically, we require: (1) That representatives of NWA and ALPA meet no later than 11:00 a. m., Friday, December 4, 1970, for the purpose of selecting a neutral member of the Adjustment Board. This neutral should be one who can and will hear the basic dispute without delay. (2) If agreement is not reached by 3:00 p. m., Friday, December 4, 1970, as to the neutral, that the parties forthwith request the National Mediation Board to appoint a neutral. We suggest that the neutral appointed to settle the dispute between IAM and NWA would be an appropriate appointment. (3) That both parties request the neutral to hear the matter immediately after he has completed the hearing on the IAM–NWA dispute. This Court sees no reason why a decision on the basic issue in this dispute cannot be handed down on or before Tuesday, December 15, 1970, recognizing that some of the collateral issues will take a longer time to resolve. (4) That a copy of the System Board of Adjustment's decision on the basic issue be filed with this Court immediately after it is handed down by the moving party.

We recognize the problems involved in suggesting that the parties submit this dispute to the neutral arbitrator appointed to hear another dispute. However, in our view, the public interest in quick resolution of the earlier dispute between NWA and the union with which it deals is so great that we must use all possible means toward a peaceful and speedy end to the problems.

We preserve the status quo by requiring ALPA to immediately withdraw its notice of November 24, 1970, or any subsequent notices of similar import; to promptly inform its officers, members and agents that it has withdrawn said notices; to inform said parties that they are free to continue to work on request of the company; and to inform them that ALPA will take no disciplinary action against pilots continuing to work on the request of the company. ALPA shall use all means at its command to communicate the contents of this order to its officers, members and agents.

We retain jurisdiction for the purpose of granting such relief as may be necessary, either on our own motion or the motion of the parties. We also reserve the right to file a further opinion expressing our reasons for issuing this order.

Let this opinion and order be served forthwith upon the above-named defendant by handing to and leaving with it one true and correct copy thereof. Service to be made as in the case of service of a Summons and Complaint in accordance with the Rules of Civil Procedure.

BRIGHT, Circuit Judge (concurring).

I concur in the court's opinion to the extent that it effectively enjoins the Air Line Pilots Association (ALPA) from instructing its members not to cross the picket lines established by BRAC. I believe that NWA has presented adequate grounds on this motion to justify the issuance of a temporary injunction pending appeal in the exercise of this court's equitable discretion. F.R.A.P. 8(a), 28 U.S.C. Eastern Greyhound Lines v. Fusco, 310 F.2d 632 (6th Cir. 1962).

I am compelled to disagree with the action of the majority which for practical purposes determines the merits of the substantive issue in this case: whether or not ALPA's claimed right as a union to instruct its members to refuse to cross BRAC picket lines is a matter the union

must submit to the System Board of Adjustment for compulsory arbitration. This difficult legal issue merits intensive study and thorough consideration, *see* Brotherhood of Locomotive Firemen & Enginemen v. Florida East Coast Ry., 346 F.2d 673 (5th Cir. 1965); Chicago & Illinois Midland Ry. v. Brotherhood of Railroad Trainmen, 315 F.2d 771 (7th Cir. 1963); Northwest Airlines, Inc. v. Transport Workers Union, 190 F.Supp. 495 (W.D.Wash.1961), and should not be resolved upon a motion for a temporary injunction. At any rate, NWA's presentation before us indicated some probability of success based upon Brotherhood of Railroad Trainmen v. Chicago River & Indiana R., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), and its progeny. The facts presented to us provide a persuasive basis to protect the parties, their members and employees, and the public from sustaining irreparable harm pending final decision on appeal. That appeal is not yet before us.

While I concur in the direction of the majority's opinion, I feel that its method takes us too far at this time.