**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, AIRLINE DIVISION, Plaintiff-Appellant,**

v.

**BRANIFF INTERNATIONAL AIRWAYS, INC., Defendant-Appellee.**

**No. 30298.**

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1971.

---

3. Hoover, Civil Liberties and Law Enforcement: The Role of the FBI, 37 Iowa L.Rev. 175, 177 (1952).

John E. Collins, Mullinax, Wells, Mauzy & Collins, Bennie Juarez, Dallas, Tex., for appellant International Brotherhood of Teamsters, Airline Division.

W. B. West, III, W. L. Keller, Clark, West, Keller, Sanders & Ginsberg, by Allen Butler, Dallas, Tex., for appellee.

Before JONES, BELL, and SIMPSON, Circuit Judges.

BELL, Circuit Judge:

This appeal by the union presents issues arising out of the denial of its application for injunctive relief to prevent Braniff from abolishing or reassigning the duties of stock clerks until after bargaining pursuant to § 6 of the Railway Labor Act. 45 U.S.C.A. § 156. In the alternative and pending determination through the grievance procedure provided for in the collective bargaining agreement between the parties, the union sought an injunction to preserve the status quo and this relief was also denied. The questions presented are whether the underlying dispute is major or minor as those terms are used in the Act, 45 U.S.C.A. § 151 et seq., and whether the district court erred in refusing to grant a status quo ante injunction. We affirm.

The union is the sole collective bargaining agent for Braniff employees employed as stock clerks. The bargaining agreement between the parties, entered into December 10, 1969, covered the 25 employees receiving notice on April 28, 1970 that their job positions would be abolished effective May 15, 1970. There is some dispute as to whether the positions were to be simply abolished or whether their duties were to be reassigned to members of another bargaining unit (International Association of Machinists). The union asserts that the work was being reassigned on the basis of the common practice of the machinists in taking parts out of the stock rooms while clerks were not on duty, and leaving information allowing the clerk to perform the necessary paper work when returning to duty. This practice had been the subject of numerous grievances filed by the union under the category of minor disputes prior to this controversy. The System Board of Adjustment held in all of these cases that this practice was not prohibited by the bargaining agreement. We do not consider this factual dispute to be crucial to a determination of the issues presented; hence we do not resolve it.

On May 11, the union served a § 6 notice on Braniff wherein the union sought to bargain concerning the abolition of the jobs. Braniff rested on the bargaining agreement saying that the contractual grievance procedure was the only remedy and that the agreement could not be changed by either party until its expiration in 1972.

At the hearing following the filing of this suit, it was shown that at all stations where stock clerks were employed prior to May 1, there was still at least one stock clerk performing the customary duties of that position, though there may have been eight hour coverage instead of the previous twenty-four hour coverage. During the periods when no stock clerk was on duty the mechanics would draw parts from the stock room and leave notations of the transaction for the stock clerks. It also appeared at the hearing that the jobs in question, along with many other jobs, were abolished as part of a reduction in forces throughout Braniff caused by the grounding of several planes due to financial losses.

The district court held that the underlying dispute was minor, and that the union was therefore not entitled to any injunctive relief. Injunctive relief to maintain the status quo ante was also denied.

I.

We turn first to the issue whether the dispute between the parties was "major" or "minor" in the parlance of the Railway Labor Act. We frequently have been called upon to define this elusive distinction. In Brotherhood of Locomo-

tive Firemen and Enginemen v. Florida East Coast Ry. Co., 5 Cir., 1965, 346 F. 2d 673, we said:

"Under the [National] Railway [Labor] Act, minor disputes involve grievances or questions of interpretation of an existing collective bargaining contract; major disputes arise from the efforts to change working conditions through the making of a new agreement."

346 F.2d at 676.

See Railway Express Agency, Inc. v. Brotherhood of Railway, Airline, and Steamship Clerks et al., 5 Cir., 1971, 437 F.2d 388, for a discussion of the Act as it relates to the handling of disputes between management and labor. See also the definitive discussion of the distinction in Elgin, Joliet & Eastern Ry. Co. v. Burley, 1945, 325 U.S. 711, 65 S. Ct. 1282, 89 L.Ed. 1886.

To support its position that the dispute here is major, the union argues that the abolition or reassignment of jobs is one of the "hard" issues involving "rates of pay, rules or working conditions," 45 U.S.C.A. §§ 152 Seventh and 156, therefore bringing into play the major dispute provisions of the Act. Braniff argues that the propriety of its reduction in force may be determined by reference to its contract with the union, and therefore the dispute is minor and for determination by the System Board of Adjustment set up in the bargaining agreement.

Braniff's position is supported by two provisions in the contract; Article 2 entitled "Management Clause", and Article 12 entitled "Reduction in Force". Article 2 provides in pertinent part:

"A. The Management of the Company and the direction of its employees, including the establishment of working conditions, the hiring, promoting, demoting and rehiring of employees in connection with any reduction or increase in working forces * * * are the functions of management to the extent that any such matters are not otherwise covered or provided for in this agreement."

Article 12 provides in part:

"A. When reducing forces, seniority shall govern subject to provisions of Article 7. At least fourteen (14) calendar days advance notice shall be given employees affected in reduction in forces and abolishment of positions. * * * "

It seems clear to us as it did to the district court that Braniff's action in abolishing the 25 positions, whether it be characterized as a reduction in force, a reassignment, or both, can at least arguably be justified by the above two contractual provisions. Thus the dispute is a minor one, and the union was not entitled to an injunction. The union's remedy lies in utilization of the grievance procedures set out in the agreement. See *Railway Express, supra*; and also St. Louis, San Francisco & Texas Ry. Co. v. Railroad Yardmasters of America, 5 Cir., 1964, 328 F.2d 749. This latter case rejected the union's argument that the dispute was major because it related in some way to "rates of pay, rules or working conditions."

Also, it may be added that the case here is not analogous of United Industrial Workers of the Seafarers International Union of North America, Gulf Lakes, and Inland Waters District, Marine Allied Workers Division, A.F.L.–C. I.O. v. Board of Trustees of Galveston Wharves, 5 Cir., 1965, 351 F.2d 183, which involved management's elimination of a bargaining unit. Unlike the situation in *Galveston Wharves* Braniff has not terminated the agreement with the union nor shortened its duration.

## II.

The next question is whether, granting that the dispute is minor, the district court should have issued an injunction to preserve the status quo ante. In Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 1960, 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d

1379, the Supreme Court held that in a minor dispute situation, while the statutes say nothing about the restoration of the status quo ante, the court may accomplish these results by freezing the conditions sought to be changed by the employer or by allowing the change but requiring the employer to continue paying the affected employees. Such relief is addressed to the district court's equitable discretion, the exercise of which is reviewable only for abuse of that discretion. Upon a review of the record, we find that the district court did not abuse its discretion in denying such injunctive relief to the union. Cf. *Railway Express, supra.*

Affirmed.