361 F.Supp. 198 (1973)
OZARK AIR LINES, INC., Plaintiff,
v.
The AIR LINE PILOTS ASSOCIATION INTERNATIONAL, Defendant.
No. 73 C 406(1).
United States District Court, E. D. Missouri, E. D.
June 25, 1973.
*199 Lon Hocker, Ziercher, Hocker, Tzinberg, Human & Michenfelder, St. Louis, Mo., Donald J. Meyer, Clayton, Mo., Paul L. Bradshaw and O. J. Taylor, Neale, Newman, Bradshaw & Freeman, Springfield, Mo., for plaintiff.
Charles A. Werner and Bruce Feldacker, Schuchat, Cook, & Werner, St. Louis, Mo., Robert S. Savelson, Cohen, Weiss & Simon, New York City, for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
This cause was tried to the Court on June 22, 1973. The Court has been duly advised by briefs, evidence, and a detailed oral discussion by both parties with the Court as to their positions. All issues for a temporary and permanent injunction were heard by the Court, with the exception of liability for damages and damages.
*200 Ozark Air Lines, Inc., is a Missouri corporation, with its principal place of business in St. Louis County, Missouri, and is a common carrier by air, engaged in interstate commerce, and subject to the provisions of the Railway Labor Act, 45 U.S.C. § 151. The defendant, Air Line Pilots Association International (hereinafter referred to as ALPA), is a labor union and the duly designated collective bargaining representative of the air line pilots and the flight hostesses employed by Ozark.
Jurisdiction of this cause is founded in the Railway Labor Act, 45 U.S.C. §§ 151-181, excluding 153, and 28 U.S.C. 1331 and 1337. The matter in controversy exceeds the sum of $10,000.00 and arises under the Constitution and laws of the United States and is a civil action arising under an act of Congress regulating commerce.
Ozark and ALPA are parties to separate agreements between Ozark and the pilots under a collective bargaining agreement, which expired on January 31, 1973, but is still in full force and effect by reason of 45 U.S.C. § 156. Ozark and ALPA are parties to a collective bargaining agreement covering the flight hostesses, which expires August 1, 1973. Both agreements are subject to the provisions of 45 U.S.C. § 152 First which provides:
"First. It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof."
45 U.S.C. § 184 provides in part:
"It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181 to 188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title."
In compliance with the foregoing provision, the pilots' agreement provides in section 28 for a System Board of Adjustment, which sets out detailed provisions for the handling of all "minor disputes" which grow out of the interruption or application of collective bargaining agreements. The same provisions are contained in the Flight Hostesses Agreement.
On April 19, 1973, Ozark's maintenance and related employees, represented by Air Line Mechanics Fraternal Association (hereinafter referred to as AMFA), went on strike and placed pickets around various Ozark stations and facilities in Missouri and elsewhere.
Ozark promptly furloughed all pilots and hostesses employed by Ozark. On May 30, 1973, Ozark wrote letters to certain pilots and hostesses requesting them to bid for limited flight operations beginning on June 21, 1973. They were requested to make the bids no later than June 14, 1973. On June 5, 1973, ALPA wrote Ozark advising them that they were concerned about recalling part of the pilots and hostesses since this would require the hostesses and the pilots to cross the established picket lines of AMFA. On June 14, 1973, resolutions were passed by the Executive Board of ALPA directing that the hostesses and the pilots not bid to resume work and not cross the picket lines.
The evidence shows that Ozark has filed schedules with the Civil Aeronautics Board (CAB) to resume schedules connecting six cities to Chicago, Illinois, and St. Louis, Missouri. These cities are: Champaign/Urbana, Illinois; Decatur, Illinois; Peoria, Illinois; Springfield, Illinois; Joplin, Missouri; and Springfield, Missouri. The limited schedule proposed by Ozark would serve *201 approximately 35,000 passengers per month. Three or four DC-9's carrying 97 passengers each would be used. Ozark has sufficient qualified mechanics in a supervisory capacity to adequately service a limited number of airplanes. It is estimated that this would reduce Ozark's deficit by approximately $178,000.00 per month. Other air lines have applied to CAB to handle the cities not now being served by Ozark because of the strike. The citizens of Peoria, Illinois, are making an effort with CAB to get some other air line to service their city because of the stoppage of Ozark's service. Ozark has entered into a mutual aid agreement with other air lines, and as a result of this mutual aid pact has and will receive from April 20, 1973, to June 21, 1973, approximately $5,800,000.00.
Both parties agree that the strike between Ozark and AMFA is a legal strike. It is the position of Ozark that ALPA has violated its contract. The contract incorporates the provisions of the Railway Labor Act and particularly the alleged violation of the provisions of 152 First, which provides that employees shall exert every reasonable effort to settle all disputes whether arising out of the application of such agreements or otherwise in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.
The evidence shows no effort on the part of ALPA to submit its differences with Ozark to the System Adjustment Board and no effort on the part of ALPA to negotiate with Ozark concerning the right of Ozark to recall the pilots and the hostesses.
It is the position of ALPA that since this is a legal strike between Ozark and AMFA, it has a right to refuse to cross a legal picket line set up by AMFA. ALPA also contends that this Court has no jurisdiction to enjoin it in any way because of the Norris-LaGuardia Act. It is the further position of ALPA that the actions of Ozark, in effect, are strike-breaking tactics and that should the pilots and flight hostesses resume work on a limited basis, it would eventually be instrumental in breaking the strike between AMFA and Ozark. ALPA also contends that recalling the pilots and the hostesses is not maintaining the status quo, but is a substantial altering of the present position.
ALPA's further position is that as a matter of law, it has a right to honor a legal picket line of its sister union and that there is no dispute between ALPA and Ozark which can be submitted to the System Adjustment Board.
Chicago and N. W. R. Co. v. Transportation Union, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 679 (1971). The Court held that parties to a labor dispute have a legal duty to exert every reasonable effort to settle disputes and that the district courts have jurisdiction to enforce this duty. The Court further held that the Norris-LaGuardia Act does not prohibit the district courts from issuing an injunction to enforce this duty, citing Boys Markets v. Retail Clerks Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).
Northwest Air Lines, Inc. v. International A. of M. & A. W., 442 F.2d 244 (C.A.8th 1970); Northwest Air Lines, Inc. v. The Air Line Pilots Association International, 442 F.2d 246 (C.A.8th 1970); and Northwest Air Lines, Inc. v. International Association of Machinists and Aerospace Workers, 442 F.2d 250 (C.A.8th 1971); Northwest Air Lines, Inc. v. Air Line Pilots Association International, 442 F.2d 251 (C.A.8th 1971). These cases hold that parties to collective bargaining agreements such as these should submit their controversies to the System Adjustment Board and that injunctions should issue where warranted.
It is the duty of the Court to first determine whether or not the evidence is sufficient to decide that the ALPA has not used reasonable efforts to settle or negotiate its differences with Ozark. It is the opinion of this Court *202 that the evidence shows no effort on the part of ALPA to negotiate its differences with Ozark. It waited from May 30th to June 14, 1973, to take action to prohibit the pilots and hostesses from returning to work instead of submitting their dispute to the System Adjustment Board when first aware of the pilots and hostesses being recalled. ALPA has violated its duty under 42 U.S.C. § 152 First. The defendant will be ordered to submit to the System Adjustment Board the question: "Does the defendant have a right under its contracts with Ozark to require the pilots and the flight hostesses to honor a picket line of a sister union and prevent them from being recalled to duty by Ozark and to impose disciplinary action against the pilots and the hostesses in the event they return to duty?"
The Court is aware of Railroad Trainmen v. Terminal Co., 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969), and Brotherhood of Railroad Trainmen v. Atlantic Coast Line R. Co., 362 F.2d 649 (C.A.5th 1966), aff'd 385 U.S. 20, 87 S. Ct. 226, 17 L.Ed.2d 20 (1966). In those cases, however, reasonable efforts were made to settle their disputes.
Plaintiff has no adequate remedy at law and will suffer substantial and irreparable injury if the relief sought is not granted. It will lose customers to other modes of transportation and to other air lines, unless service is resumed. The public interest in the interruption of service of an interstate carrier is of primary concern to the courts and is sufficient irreparable damage for an injunction to issue. Damages cannot be accurately estimated as to Ozark's loss of identity as a carrier, loss of routes to other carriers, loss of customers permanently, and general loss of good will of the public. Their legal remedies are inadequate and an injunction will be issued.
Both parties agree that legal negotiations have been going on between AMFA and Ozark to settle their dispute and the Court at the conclusion of the hearing on the evidence requested Ozark to resume negotiations with AMFA. Ozark responded that it was ready to immediately resume negotiations with AMFA. ALPA was requested to urge AMFA to immediately negotiate with Ozark. ALPA responded it would use its best efforts to urge the negotiations be immediately resumed.