Charles ARTHUR, Kenneth L. Bohannon, Paul D. Bennett, Jacob Gasper, and Phillip R. Irwin, Plaintiffs,

v.

UNITED AIR LINES, INC., Joseph Hertrich, Henry A. Dykhuis, and Thomas Gipson, Defendants.

Civ. A. No. 85–Z–1835.

United States District Court, D. Colorado.

March 9, 1987.

---

Barry D. Roseman, Denver, Colo., for plaintiffs.

John D. Coombe, Maureen Reidy Witt, Holland & Hart, Denver, Colo., Robert P. Casey, Trial Atty., United Air Lines, Inc., EXOLD, Chicago, Ill., for defendants.

## MEMORANDUM OPINION & ORDER

WEINSHIENK, District Judge.

This labor relations case is before the Court on the parties' cross motions for partial summary judgment. The issue before the Court is whether the Railway Labor Act (RLA), 45 U.S.C. § 151, grants sympathy strikers a right to damages against their employer for terminating them when they refused to cross picket lines and thereby failed to report to work.

This case grows out of a 29–day strike by the Air Line Pilots Association, International (ALPA) against defendant United Air Lines, Inc. (United) in May and June of 1985. The events leading up to this strike and the strike itself are discussed in *Air Line Pilots Ass'n, International v. United Airlines, Inc.*, 614 F.Supp. 1020 (N.D.Ill. 1985), *aff'd in part and rev'd in part*, 802 F.2d 886 (7th Cir.1986). Although the strike involved only two parties, United and ALPA, United employees who did not belong to ALPA had to make the difficult decision whether to cross union picket lines. Each of the plaintiffs affected by these motions, Arthur, Bennett, Irwin, and Bohannon, decided not to cross picket lines out of sympathy for the union. This Court granted Plaintiffs' Motion for Partial Summary Judgment on Gasper's Fifth and Sixth Claims on July 3, 1986; his claim under the RLA is therefore moot. By letters dated May 20, 1985, Arthur and Irwin were notified of their termination on the grounds that they failed to report to work on May 17. Bennett was on military leave from May 15 through May 18. He did not report to work on May 19 and was terminated by letter dated May 20. Bohannon was on military leave from May 17 through

June 3; however, because the strike was still in progress he did not report to work on June 4. Defendant United terminated Bohannon by letter dated June 21.

In order for the Court to grant a motion under Fed.R.Civ.P. 56, there must be no genuine issue as to any material fact. The parties agree that no material fact is in dispute and that the motions are ripe for determination.

## I.

The Railway Labor Act governs labor disputes in two sectors of the transportation industry, railroads and airlines. *See* 45 U.S.C. § 151, First (railroads); 45 U.S.C. §§ 181, 182 (airlines). The RLA arose as a negotiated compromise between the railroad owners and the unions. After embodying the compromise in the form of a bill, the parties submitted it to Congress, which passed the bill in 1926. *See Chicago & North Western Railway Co. v. United Transp. Union,* 402 U.S. 570, 589, 91 S.Ct. 1731, 1741, 29 L.Ed.2d 187 (1971) (Brennan, J., dissenting). The Act was amended in 1934, *see International Ass'n of Machinists v. Street,* 367 U.S. 740, 759, 81 S.Ct. 1784, 1795, 6 L.Ed.2d 1141 (1961), and airlines were made subject to the Act in 1936. *See* 45 U.S.C. § 181.

The RLA regulates two types of labor disputes, "minor" disputes involving the interpretation or application of collective bargaining agreements and "major" disputes involving "the formation of collective agreements or efforts to secure them." *Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945), *aff'd on rehearing,* 327 U.S. 661, 66 S.Ct. 86, 90 L.Ed. 488 (1946). The parties do not dispute that this case arises in the context of ALPA's efforts to secure a collective bargaining agreement, and therefore, if plaintiffs are protected by the Act, they are protected by the provisions relating to major disputes. The Act contains a two-stage process to resolve such disputes. *See Brotherhood of Railway Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344 (1945); *Air Line Pilots Ass'n, International v. United Air Lines, Inc.,* 802 F.2d at 895. The first stage consists of negotiations between labor and management, during which time the parties are prohibited from unilateral action. If the parties choose, they may submit the dispute to binding arbitration in front of the National Mediation Board. *See* 45 U.S.C. § 155, First and § 157. In the case of a dispute which poses a serious threat to essential transportation, the President may create an emergency board to "investigate and report respecting such dispute." 45 U.S.C. § 160. The first-stage procedures are "purposefully long and drawn out, based on the hope that reason and practical considerations will provide in time an agreement that resolves the dispute." *Brotherhood of Railway Employees v. Florida East Coast Railway Co.,* 384 U.S. 238, 246, 86 S.Ct. 1420, 1424, 16 L.Ed.2d 501 (1966).

If the parties complete the first-stage procedures without an agreement, they may engage in economic self-help, which constitutes the second stage of the Act's scheme. The Supreme Court has referred to the self-help stage as "the inevitable alternative in a statutory scheme which deliberately denies the final power to compel arbitration." *See Jacksonville Terminal Co.,* 394 U.S. at 378, 89 S.Ct. at 1115, *quoting Florida East Coast Railway Co. v. Brotherhood of Railroad Trainmen,* 336 F.2d 172, 181 (5th Cir.1964). It is undisputed for purposes of these motions that United and ALPA had reached the second-stage of the statutory scheme on May 17, 1985, the first day of the strike. Moreover, this Court has previously ruled by Order of July 3, 1986, that plaintiffs, as Flight Operations Training Instructors (FOTIs), are "employees" within the meaning of the Act. *See* 45 U.S.C. §§ 152, Third and Fourth. The issue that remains is whether the RLA protects plaintiffs by restricting United's ability to retaliate against them.

## II.

The Railway Labor Act is silent as to what forms of self-help are protected and

what forms are not. *See Jacksonville Terminal Co.*, 394 U.S. at 378, 89 S.Ct. at 1115. Therefore, in order to determine the scope and nature of the Act's protections, it is necessary to examine the source of plaintiffs' alleged rights. Plaintiffs claim that their termination by United violated § 152, Third and Fourth. *See* Amended Complaint, ¶ 10. Section 152, Third states in part that both parties' representatives for purposes of collective bargaining shall be chosen "by the respective parties without interference, influence, or coercion by either party...." Section 152, Fourth states in part that "[e]mployees shall have the right to organize and bargain collectively through representatives of their own choosing" and "it shall be unlawful for any carrier to interfere in any way with the organization of its employees...." Although this language seems to focus more upon union organizing activity than union strike activity, the Supreme Court has held that "[p]eaceful primary strikes and picketing incident thereto lie within the core of protected self-help under the Railway Labor Act." *Jacksonville Terminal Co.*, 394 U.S. at 386, 89 S.Ct. at 1119. "Whether the source of this right be found in a particular provision of the Railway Labor Act or in the scheme as a whole, [the right to strike] is integral to the Act." *Id.* at 384–85, 89 S.Ct. at 1118–19 (footnote omitted).

United argues that plaintiffs neither belonged to ALPA nor acted in concert with one another in deciding not to cross union picket lines. *See* Brief in Support of Defendant's Motion for Partial Summary Judgment at 5. Plaintiffs do not deny that they were not members of ALPA. As for concerted action, the Court agrees that the undisputed evidence shows that plaintiffs acted individually in not crossing ALPA's picket lines. Moreover, the Court rejects plaintiffs' belated argument that they were responding to efforts by the International Brotherhood of Teamsters to organize the FOTIs. *See* Plaintiffs' Answer Brief at 7. None of plaintiffs' depositions attached as exhibits to the motions shows anything other than that plaintiffs acted out of sympathy and in support of ALPA, not the Teamsters. Similarly, there is no evidence what-soever to support plaintiffs' suggested inference that defendant retaliated against plaintiffs because of their pro-Teamster sympathies. All the evidence before the Court points to ALPA's strike and plaintiffs' response to it as the motivating causes for plaintiffs' terminations.

The fact that plaintiffs made individual decisions not to report to work during the strike and were not members of ALPA is not dispositive of the question of whether plaintiffs fall within the RLA's protections of picketing. Plaintiffs argue that their rights as sympathy strikers derive from ALPA's right to appeal to employees of United, whether they be ALPA members or not.

The Supreme Court's opinion in *Jacksonville Terminal Co.*, while clearly recognizing the right to strike and to picket under the RLA, offers little guidance on the scope of those rights. That case involved a state court injunction against secondary picketing of a railroad terminal used by the Florida East Coast Railway Company (FEC), the employer against whom the strike was directed. Union pickets made direct appeals to all railroad employees, not just FEC employees, to respect the picket lines. The Court held that "picketing—whether characterized as primary or secondary—must be deemed conduct protected against state proscription." *Id.* at 393, 89 S.Ct. at 1123 (footnote omitted). Although the Court held that picketing was protected conduct, it is important to address the question, "Protected from what?" In *Jacksonville Terminal Co.*, the Act protected union pickets from a state court injunction. The Court was careful to point out that it did not discuss what limitations were placed on employers by the Act. *Id.* at 382 n. 17, 89 S.Ct. at 1117 n. 17. Subsequent opinions of the Supreme Court construing the RLA have not addressed the question of what protections, if any, sympathy strikers have from employer retaliation, nor have any other reported decisions of which this Court is aware. *But see Northwest Airlines, Inc. v. Air Line Pilots Ass'n, International*, 325 F.Supp. 994, 1003 (D.Minn.1970) (the right to appeal to

secondary employees "must obviously carry with it the corresponding right of the non-striking employee to respond"), *rev'd and remanded on other grounds*, 442 F.2d 246 (8th Cir.1970), *cert. den.*, 404 U.S. 871, 92 S.Ct. 70, 30 L.Ed.2d 116 (1971).

Plaintiffs urge this Court to look for guidance to cases decided under the National Labor Relations Act (NRLA). Specifically, plaintiffs cite NLRA cases in which courts have protected sympathy strikers from employer retaliation. *See, e.g., National Labor Relations Board v. Gould, Inc.*, 638 F.2d 159, 163 (10th Cir. 1980); *National Labor Relations Board v. Southern Greyhound Lines*, 426 F.2d 1299, 1302 (5th Cir.1970). The Supreme Court has warned that the "National Labor Relations Act cannot be imported wholesale into the railway labor arena. Even rough analogies must be drawn circumspectly, with due regard for the many differences between the statutory schemes." *Jacksonville Terminal Co.*, 394 U.S. at 383, 89 S.Ct. at 1117. The Court did, however, look to the NLRA for direction in construing the RLA in *Jacksonville Terminal Co.*, as have other courts. *See, e.g., Barnett v. United Air Lines, Inc.*, 738 F.2d 358 (10th Cir.), *cert. den.*, 469 U.S. 1087, 105 S.Ct. 594, 83 L.Ed.2d 703 (1984) (statute of limitations); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir.1984) (discharge due to antiunion animus). More recently, the Seventh Circuit has referred to the NLRA in determining whether United's photographing of ALPA pickets in the dispute involved here violated ALPA's right under the RLA to strike. *See Air Line Pilots Ass'n, International v. United Air Lines, Inc.*, 802 F.2d 886, 904 (1986) (holding that NLRA cases cited apply to RLA). This Court agrees with plaintiffs that cases decided under the NLRA may appropriately be considered by this Court in analyzing the rights of sympathy strikers under the RLA. Such cases are not binding on this Court, but merely serve as analogies in determining what limitations, if any, the RLA places upon an employer's self-help activity.

### III.

After carefully considering both parties' arguments and the case law, this Court is convinced that United did violate plaintiffs' rights under the RLA by firing them after they refused to cross ALPA's picket lines. United's argument that plaintiffs were fired for a legitimate reason— failure to report to work—begs the question. The reason that plaintiffs failed to report to work was because they engaged in activity the Court now rules is protected. The Court holds that terminating non-union employees who fail to report to work because they refuse to cross picket lines during a primary strike of their employer is unlawful under RLA absent evidence that such terminations were necessary to prevent disruption of vital transportation services. The Court agrees with plaintiffs that their rights as sympathy strikers derive from the right to strike and to picket recognized in *Jacksonville Terminal Co.* The Court therefore rejects United's argument that plaintiffs lack standing. When a union's appeal to nonunion employees for support is conditioned by the threat of employer retaliation, the right to strike is significantly impinged. As previously discussed, *Jacksonville Terminal Co.* only concerned restrictions upon States to regulate picketing. However, restrictions also exist on an employer's right to self-help. In *Air Line Pilots Ass'n, International,* the Seventh Circuit reviewed United's tactic of rebidding the positions of striking pilots and held:

[a]lthough United had the right to employ self-help, that right was limited. Under the circumstances presented here, we can only conclude that, in the balance between United's right to self-help and its duty to respect ALPA's right to exist and function, the district court did not err in finding that United's actions regarding the rebid violated the RLA.

802 F.2d at 900 (footnote omitted). The facts before the Court in *Air Line Pilots Ass'n, International* concerned action by the employer to penalize striking union members. *Id.* at 899. Although United's actions in this case are directed against nonunion employees, the ultimate effect

upon ALPA is the same, albeit less direct: the effectiveness of ALPA's self-help measures is diminished. It is true, as United argues, that an employer has a duty under the RLA to maintain operations during a strike. *See Brotherhood of Railway Employees v. Florida East Coast Railway Co.,* 384 U.S. 238, 244, 86 S.Ct. 1420, 1423, 16 L.Ed.2d 501 (1966). To this end, United had the right to hire permanent replacements in order to maintain its operations. *See Air Lines Pilots Ass'n, International,* 802 F.2d at 907, 909. United, however, does not assert that plaintiffs were necessary for it to maintain operations. Instead, it states that plaintiffs were terminated for not reporting to work, just as they would have been terminated for not reporting to work in the absence of a strike. *See* Defendant's Memorandum in Opposition at 10. In addition, the evidence is undisputed that no permanent FOTIs were hired during the strike, *see* Plaintiffs' Motion for Partial Summary Judgment, Exhibit 20, which supports plaintiffs' argument that terminating the FOTIs was not necessary to maintain operations. Thus, by ruling that plaintiffs' activities were protected, the Court is not ignoring corresponding obligations of United. In reconciling the clash of interests in this case, the Court believes that the right to strike recognized in *Jacksonville Terminal Co.,* as well as the policies behind the RLA, are best served by a rule which protects plaintiffs from retaliation.

Finally, the Court rejects United's argument that granting relief to plaintiffs will create a statutory anomaly since United is subject to the mandatory first-stage procedures of the RLA, but non-union employees such as plaintiffs are not. By the time plaintiffs took actions in support of ALPA, the first-stage procedures of the RLA had already been exhausted. Holding that the RLA protects sympathy strikers during the second-stage of a labor dispute does not affect the balance of obligations between union and management during the first-stage, which includes United's two examples of allegedly anomalous procedures, cooling off periods and "mandatory" arbitration. The Court therefore does not believe an anomaly has been created.

Accordingly, it is

ORDERED that Plaintiffs' Motion for Partial Summary Judgment concerning the claims of plaintiffs Arthur, Bennett, Irwin, and Bohannon under the First Claim for Relief is granted. It is

FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment concerning plaintiffs' First Claim for Relief is denied.